**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

_____

No. 00-30900

_____


UNITED STATES OF AMERICA,

                                        Plaintiff-Appellee,


VERSUS


THOMAS ANTHONY DEVILLE,

                                        Defendant-Appellant.


_____

No. 00-30968

_____


UNITED STATES OF AMERICA,

                                        Plaintiff-Appellant,


VERSUS


THOMAS ANTHONY DEVILLE,

                                        Defendant-Appellee.


_____

No. 00-31124

_____


UNITED STATES OF AMERICA,

                                        Plaintiff-Appellee,


VERSUS


LANIER CHERRY,

                                        Defendant-Appellant.

Appeals from the United States District Court
for the Western District of Louisiana
January 7, 2002

Before JONES and DeMOSS, Circuit Judges, and FELDMAN, District
Judge.[*]

FELDMAN, District Judge:


    This appeal, which presents several issues, arises out of a

federal and state investigation into a Louisiana-based marijuana

distribution organization led by appellant, Lanier Cherry.  The

marijuana distribution ring was controlled from Cherry's home in

Duson, Louisiana.  Appellant, Thomas Anthony Deville, a friend of

Cherry's, who was also involved in the drug ring, served as the

Chief of Police in Duson, Louisiana from 1995 to 1999.  In 1998,

after losing his bid for re-election as police chief, Deville

agreed to become involved with Cherry to make some extra money.

On November 16, 1998, while the lame duck chief of police,

Deville went to Texas and picked up a load of marijuana from

Cherry's supplier in Houston, Avel Garcia.

    The details of Deville's trip to Houston were given to the

Texas Department of Public Safety by an informant who had been

present when Deville delivered the marijuana to Cherry.  Agents

from the Department of Public Safety alerted the Louisiana State

Police narcotics investigators, who were already investigating

_____

    [*]    District Judge for the Eastern District of Louisiana,
sitting by designation.

2

Cherry's activities.

On November 21, 1998, undercover narcotics agents conducted a controlled sale of 200 pounds of marijuana to Cherry.  During the sale, they engaged in extensive conversation with Cherry regarding marijuana trafficking.  Cherry commented that he was concerned about state and federal law enforcement, but he was not worried about the local Duson police.  He told the undercover agents that Deville was transporting marijuana for him to pay off his debts.  He also told them that Deville had recently delivered a load of marijuana for him from Texas.  Shortly after the undercover agents left Cherry's house, federal and state agents executed a search warrant on the house.  The search turned up telephone numbers of various co-conspirators, including Deville's home number and his room and telephone number at the Super 8 Motel in Houston(where he stayed when he picked up the marijuana from Garcia for Cherry).

Armed with this information, FBI special agent Stephen Richardson and Louisiana State Trooper Dirk Bergeron decided to conduct a non-custodial interview of Deville.  On March 9, 1999 they went to Deville's house and he voluntarily answered their questions and was specific about his trip to Houston.  Agent Richardson prepared a document recounting Deville's statements and Deville reviewed and signed it.  Two days later the agents returned to Deville's house to show him additional photo line-ups they had received from Texas authorities.  The events that occurred at this second encounter animate some of our inquiry.

The agents testified at trial that Deville told them that he had his gun with him for protection when he went to Houston for the drugs.  However, the agents did not have Deville sign another statement.  Instead, they prepared a FD-302 memorandum memorializing the conversation as they remembered it had occurred.

Cherry and Deville were later indicted with thirteen other defendants on fifty-counts of conspiracy to distribute marijuana and other drug related violations. On October 13, 1999 Cherry pleaded guilty to Count 1 of the Superceding Indictment which charged him with conspiracy to distribute and possession with the intent to distribute more than 1,000 kilograms of marijuana.  On August 16, 2000, after a hearing to address Cherry's objections to the Pre-Sentence Report, the district judge sentenced Cherry to 293 months imprisonment and five years supervised release. Cherry now appeals the district court's sentence.  He raises three issues: 1) the district court erred in ruling that his prior convictions were not related offenses for purposes of sentencing; 2) he was denied equal protection under the law because he did not receive a similar criminal history calculation as his wife, Tina Cherry; and 3) the district court erred in imposing a sentence that exceeded the statutory maximum.

On  December 14, 1999 Deville was named as the only defendant in a Second Superceding Indictment charging him in four counts.  Count I charged him with conspiracy to distribute and posses with the intent to distribute marijuana in violation of 21

4

U.S.C. § 846. Count II charged him with possession with the intent to distribute marijuana in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(D). In Count III, he was charged with interstate travel in aid of illegal activity in violation of 18 U.S.C. §1952(a)(3) and in Count IV he was charged with carrying and possessing a firearm during, in relation to, and in furtherance of a drug trafficking crime in violation of 18 U.S.C. §924(c)(1)(A)(i). After a seven day trial, the jury returned guilty verdicts against Deville on all four counts. Deville then moved for judgment of acquittal as to the firearm count, which was granted by the district court. Deville was sentenced to thirty-three months imprisonment and three years supervised release, on counts I, II and III, all to run concurrently. In calculating Deville's criminal history, the district court added a two point enhancement under Section 3B1.3 of the Sentencing Guidelines because it found that Deville had used his position as police chief in furtherance of the drug conspiracy. The government appeals the district court's grant of Deville's motion for judgment of acquittal on the gun count, and Deville appeals the court's two point sentencing enhancement.

We reverse in part and affirm in part.

## I. Deville's Motion for Judgment of Acquittal

### A.

The government asserts that the district court erred in granting this motion because Deville confessed to agents to carrying a gun and the confession was properly and adequately

5

corroborated at trial. The government complains that the district court applied the wrong standard when it stated that the jury verdict was against the weight of the evidence in ruling on the motion for acquittal. We agree and reverse the district court on this issue.

We review the district court's grant of a judgment of acquittal *de novo*, applying the same standard as applicable to the district court. United States v. Sanchez, 961 F.2d 1169, 1179 (5th Cir. 1992). The guiding standard on a motion for judgment of acquittal is "whether viewing the evidence most favorably to the Government, a reasonable-minded jury could find the admissible evidence sufficient to support the jury's verdict of guilty." U.S. v. Maner, 611 F.2d 107, 108 (5th Cir. 1980)(citing Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942); United States v. Brown, 587 F.2d 187, 190 (5th Cir. 1979); United States v. Kohlmann, 491 F.2d 1250, 1253 (5th Cir. 1974)). We stress that "all reasonable inferences and credibility choices must be made in favor of the jury verdict." Id. at 109.

Count VI of the Second Superceding Indictment charged Deville with knowingly possessing and carrying a firearm during and in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i). To establish a violation of 18 U.S.C. § 924(c)(1)(A)(i), the government must prove beyond a reasonable doubt that: 1) the accused used or carried a firearm, and 2) the use or carrying was during and in relation to a crime of violence or drug trafficking crime. Smith v. United States, 508 U.S. 223,

6

228, 113 S.Ct. 2050, 2053, 124 L.Ed.2d 13 (1993). To establish that Deville carried a firearm, the government need not show that he physically carried it on his person. United States v. Muscarello, 524 U.S. 125, 138-39, 118 S.Ct. 1911, 1919-20, 141 L.Ed.2d 111, 6 (1998). For example, one is considered to have carried a firearm if he knowingly possessed and conveyed a firearm in a vehicle he was driving. Id. Furthermore, the firearm need not be immediately accessible in order to satisfy the "carried" requirement of § 924(c)(1). United States v. Pineda-Ortuno, 952 F.2d 98, 104 (5th Cir. 1992). Deville was charged with possessing a firearm during and in relation to a drug offense; the government focused its proof on the drug crime, which anchored the gun count. The jury believed the government's witnesses and said Deville was guilty.

Nevertheless, in granting the acquittal, the district court said that "the jury verdict was against the weight of the evidence and that the record does not contain sufficient proof to support a finding of guilty as to [the firearm count]." The trial court's judgment of acquittal does not contain any other reasoning and it does not address specific details of the evidence, but our review of the transcript of the hearing on the motion for judgment of acquittal tells us that the trial judge was anxious about the reliability of the memory of the law enforcement agents who testified as to Deville's gun confession.[1] The trial court's

---

[1] In referring to the content of the 302 memorandum, the trial court stated:

credibility choice is the error. Whether or not the court accepted the trial testimony, we hold that such choices are for the jury, not the judge. "It is not for the court," we have held, "upon motion for judgment of acquittal, to weigh evidence or assess the credibility of witnesses." United States v. Rasco, 123 F.3d 222, 228 (5th Cir. 1997). That is exactly what happened here. Although there was no evidence that anyone actually saw Deville carrying a gun, the testimony of the agents as to Deville's confession is evidence which on this record could be weighed only by the jury, not by the trial judge. It was error to do so.

B.

Deville maintains that because his statement to the agents that he was carrying a gun was not corroborated by other independent evidence, he cannot be convicted on the gun count solely by the testimony of the agents. He correctly observes that one cannot be convicted on the basis of an uncorroborated

---

It bothered me, too, that there was no tape recording of any of these statements. That bothered me. And it still bothers me because, although I think Agent Richardson and whomever else was with Agent Richardson heard what they heard, sometimes what people hear and what the other person says can be different. In the first instance, we have him writing what he said right down in front of Mr. Deville. In the second instance we didn't have that. But that gives me some pause when we don't have a tape recording of what was said. If we had one, there would be no question about what was said and what was not said. So that gives me some pause.

Hearing on Deville's Motion for Judgment of Acquittal at 5-6, United States v. Deville, No. 98-60049 (W.D. La. March 16, 2000).

8

confession. The government counters that plenty of extrinsic evidence corroborates the drug trafficking offense, and, therefore, Deville's statement to the agents that he carried a gun during the drug trafficking offense is supported and confirmed by the drug crime evidence. We agree.

The Supreme Court ruled years ago that "an accused may not be convicted on his own uncorroborated confession." Smith v. United States, 348 U.S. 147, 152, 75 S.Ct. 194, 197, 99 L.Ed. 192 (1954). That has been immutable doctrine ever since. The government must introduce independent evidence which would tend to establish the trustworthiness of the confession. Id., at 156. But the doctrine is not as unyielding as it seems. "The corroborative evidence alone need not prove the defendant's guilt beyond a reasonable doubt, nor even by a preponderance, as long as there is substantial independent evidence that the offense has been committed, and the evidence as a whole proves beyond a reasonable doubt that the defendant is guilty.... [E]xtrinsic proof [is] sufficient which merely fortifies the truth of the confession, without independently establishing the crime charged." United States v. Garth, 773 F.2d 1469, 1479 (5th Cir.1985), cert. denied, 476 U.S. 1140, 106 S.Ct. 2246, 90 L.Ed.2d 693(1986)(internal quotations omitted). The corroborating independent facts need only support the "essential facts admitted sufficiently to justify a jury inference of their truth." Opper v. United States, 348 U.S. 84, 93, 75 S.Ct. 158, 164 (1954). See also United States v. Frazier, 434 F.2d 994, 995 (5th Cir. 1970). "The evidence

9

corroborating a confession must tend to connect the accused with the crime. Corroboration is satisfied if the accused by his confession demonstrates knowledge of the time, place or method of the offense." United States v. Abigando, 439 F.2d 827,832 (5th Cir. 1971). "If there is extrinsic evidence tending to corroborate the confession, the confession as a whole is admissible; and some elements of the offense may be proven entirely on the basis of a corroborated confession." United States v. Gravitt, 484 F.2d 375, 381 (5th Cir. 1973). We need not look very far for fortification and corroboration in this record.

Here, the underlying drug conviction corroborates Deville's statements during the March 11, 1999 interview. On March 11, 1999 the agents returned to Deville's house to show him some photo line-ups they forgot to bring when they first interviewed him two days earlier. At trial, Sergeant Bergeron testified that during the March 11, 1999 interview Deville identified a picture of Avel Garcia's brother, whom he met when he went to Houston for Cherry. On the "Remarks" section of the identification form, Deville wrote, "Look like fatboy brother in Texas. Help load the box and red duffle bag while in Houston, Texas. He laughed at my D.A.R.E. shirt." Bergeron also testified that during the interview, Deville told them that he carried a gun for personal protection when he went to Houston to pick up the load of marijuana for Cherry. FBI agent Stephen Richardson, who authored the 302 memorandum, also testified that Deville said that he carried his gun with him for protection when he went to Houston to pick up marijuana for Lanier

10

Cherry.  The 302 memorandum states:

> While employed as chief of police in Duson, Louisiana, Deville's duty weapon was a Biretta .9 millimeter semi-automatic handgun.  Deville still owns the Biretta .9 millimeter, and utilizes it for personal use.  Deville carried the Biretta .9 millimeter with him when he made a trip to Houston, Texas for Lanier Cherry.  Deville was not concerned with his safety because he carried a Biretta .9 millimeter in his overnight bag and kept it with him at all times.  Deville carried the Biretta .9 millimeter with him as a means of personal protection.  While Deville and Fat Boy were in the vehicle en route to Fat Boy's house, Deville had the Biretta .9 millimeter beside him at all times.  Deville normally carries the Biretta .9 millimeter under the driver's seat of his pickup truck.

The details of the drug trafficking crime in the 302 memorandum and the March 11, 1999 interview, most of which were independently corroborated with extrinsic evidence at trial, corroborate the firearm offense.  See Gravitt, 484 F.2d 375 (5th Cir. 1973)(interstate transportation element of firearms charge could be proven by confession alone since most other aspects of confession were independently corroborated).  The evidence for the drug conviction is intertwined with the events that encompass the gun charge.  We reverse the district court's grant of Deville's motion for judgment of acquittal.

II.  The Increase in Deville's Sentencing Guidelines Score

Next, Deville appeals the district court's two level increase of his sentencing guidelines score based on a finding that he abused a position of public trust in the commission of a drug

11

trafficking offense.  Deville claims that the government presented no reliable evidence to show that he used his position as Chief of Police for the Town of Duson to facilitate the commission or concealment of drug related activity.  He maintains that the government did not present any evidence to show that he knew that Lanier Cherry was involved in drug distribution until after he left office in 1998 or that he used his position as police chief to facilitate or conceal his November 17, 1998 trip to Houston.  We affirm the district court.

Section 3B1.3 of the United States Sentencing Guidelines provides for a two-level increase in the offense level "[i]f the defendant abused a position of public or private trust, or used a special skill, in a manner that significantly facilitated the commission or concealment of the offense."  While a trial court's application of the Sentencing Guidelines is reviewed *de novo*, its factual findings are reviewed only for clear error.  United States v. Dixon, 132 F.3d 192 (5th Cir.1997).  Because "the application of § 3B1.3 is a sophisticated factual determination," we review a § 3B1.3 sentencing enhancement under a clearly erroneous standard. United States v. Fisher, 7 F.3d 69, 70 (5th Cir. 1993); United States v. Iloani, 143 F.3d 921, 922 (5th Cir. 1998).

The district court found that Deville should get the two point enhancement because he participated in transporting marijuana for Cherry while he was acting as Police Chief of Duson and because he was aware of Cherry's illegal drug trafficking and failed to take action against Cherry.

12

The district court's findings are not clearly erroneous. The evidence in this case adequately supports the court's findings that Deville abused a position of public trust. Defeated but not out of office, Deville knew about Cherry's drug trafficking activities and failed to take any action. He was present at Cherry's house on several occasions when people, including Cherry, had been smoking marijuana. He was present when Cherry was packing bundles of marijuana for distribution. Deville never made any effort to seize the marijuana or arrest anyone involved in the illegal activities. Deville transported marijuana for Cherry while he was still acting Police Chief and he believed that his badge would enable him to transport the drugs without any problems from other law enforcement officials. The overwhelming evidence supports the conclusion that, although a lame duck, Deville used his position as police chief to significantly facilitate the commission or concealment of a crime.

We turn now to the issues Cherry raises.

### III. Cherry's Classification as a Career Offender

On April 29, 1981 Lanier Cherry was convicted in the Western District of Louisiana for two counts of distribution of Dilaudid. On December 23, 1981, Cherry was also convicted in the Eastern District of Louisiana of conspiracy to distribute Dilaudid and distribution of Dilaudid. When calculating Cherry's criminal history score for the purpose of sentencing in this case, the district court found that Cherry's two prior convictions were not related. (If they were deemed related, Cherry would avoid the career

13

offender taint).

Cherry assets that under <u>United States v. Robinson</u>, 187 F.3d 516, 520 (5th Cir. 1999), his prior convictions should be considered related because the distribution conviction in the Western District of Louisiana involved the conspiracy to distribute Dilaudid that Cherry was convicted on in the Eastern District of Louisiana. The government responds that the district court was correct in not treating Cherry's prior convictions as related because they involved separate drug distributions on different dates involving different cooperating individuals.

Application of the Sentencing Guidelines is a question of law subject to *de novo* review. <u>United States v. Otero</u>, 868 F.2d 1412, 1414 (5th Cir.1989).

U.S.S.G § 4B1.1 provides enhanced punishment for any "career offender," which includes criminals with at least two prior felony convictions for either a crime of violence or a controlled substance offense. Under U.S.S.G § 4A1.2(a)(2), prior sentences imposed in "related cases" are to be considered as one sentence when calculating a defendant's criminal history score. The Commentary to this section instructs that a sentencing court should consider previous cases to be related if they occurred on a single occasion, were part of a single scheme, or "were consolidated for trial or sentencing." U.S.S.G. § 4A1.2, application note 3. The Commentary adds that "[p]rior sentences are not considered related if they were for offenses that were separated by an intervening arrest (i.e., the defendant is arrested for the first offense prior to committing the

14

second offense)."

Here, Cherry pleaded guilty to the conspiracy charges in the Eastern District of Louisiana after he was convicted on the distribution charges in the Western District of Louisiana. He was arrested for distribution of Dilaudid in the Western District of Louisiana on December 3, 1980 and on December 22, 1981, over a year later, he was arrested for conspiracy to distribute Dilaudid and distribution of Dilaudid from February 1977 until May 1981 in the Eastern District of Louisiana. Thus, under the guidelines, the December 3, 1980 arrest would be intervening, because it was before the commission of the second offense, and, therefore, the convictions would not be deemed related. Furthermore, Cherry's two prior convictions occurred in different districts and involved separate drug distributions on different days involving different cooperating individuals.

Cherry's reliance on United States v. Robinson, 187 F.3d 516(5th Cir. 1999) is misplaced. In Robinson, we held that the prior convictions were related because during the commission of the first offense the defendant arranged the crack distribution that eventually resulted in his second offense. That fact setting is not present here. Thus, we affirm the district court's finding that Cherry's prior convictions were not related.


IV.  Denial of Equal Protection

Cherry next asserts that failure to consider the convictions as being related amounts to an unconstitutional denial of equal

15

protection. Lanier Cherry's ex-wife, Tina Cherry, was also convicted on the same Dilaudid charges as Cherry. When they were sentenced in those cases, they both received identical sentences. Tina Cherry was later convicted on marijuana distribution charges unrelated to Cherry's. When she was sentenced, the court apparently considered the two prior Dilaudid convictions to be related. Because Cherry's two prior Diluadid convictions were not considered to be related, Cherry argues that he was denied equal protection under the law. Cherry raises this issue for the first time on appeal and brings to our attention no helpful precedent.

"This Court will not address an issue raised for the first time on appeal unless it is a purely legal issue and the refusal to consider it would result in a miscarriage of justice." Aguirre v. Armstrong World Indus., Inc., 901 F.2d 1256, 1258 (5th Cir.1990). An equal protection claim raised for the first time on appeal and which does not equate with plain error, will not be considered. United States v. O'Banion, 943 F.2d 1422, 1432(5th Cir. 1991). Because we find that Cherry's sentence was correctly calculated under the guidelines, our refusal to hear his equal protection claim based on the calculation of his sentence would not result in a miscarriage of justice.

We also note that "[a] defendant cannot rely upon the sentences which other defendants receive as any yard stick for his sentence." United States v. Atkins, 618 F.2d 366, 373-74(5th Cir. 1980)(citations omitted); United States v. Garcia, 693 F.2d 412 (5th Cir. 1982)(no denial of equal protection when defendant received

16

harsher sentence that his co-defendant).

### V.   Cherry's Apprendi Issue

Finally, Cherry raises Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) and insists that decision invalidates his sentence because the government abandoned its allegations as to drug quantity in the pleadings.  We do not agree. In Apprendi, the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Apprendi, 120 S.Ct. at 2362-63.

Cherry pleaded guilty to Count I of the indictment charging him with conspiracy to distribute and possess with the intent to distribute more than 1,000 kilograms of marijuana.  During the plea colloquy, Cherry's counsel acknowledged that he was pleading guilty to the conspiracy charge, but contested the 1,000 kilogram quantity alleged in the indictment.  However, Cherry entered a written factual stipulation in which he agreed that he conspired to distribute and possess with the intent to distribute "at least 100 kilograms or more" or marijuana.  The truth or accuracy of this stipulation has not been and cannot be challenged.  Because Cherry was sentenced within the permissible guidelines for distribution of at least 100 kilograms of marijuana, as Cherry admits, Apprendi simply does not apply.  United States v. Fort, 248 F.3d 475, 483 (5th Cir.), cert denied, 2001 WL 1045506 (Oct 15, 2001)(when

17

defendant stipulated to the amount of drugs at the time of his plea and the sentence was enhanced within the statutory range based on stipulation, <u>Apprendi</u> does not apply).

Accordingly, the district court's grant of the motion for judgment of acquittal is REVERSED. On all other issues the district court is AFFIRMED. This case is Reversed in part and Affirmed in part and Remanded for further proceedings consistent with this opinion.