United States Court of Appeals
Fifth Circuit

**F I L E D**

**July 1, 2005**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

---

No. 04-20177

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

RONALD NORMAN; GLENN EDWARD SCOTT,

Defendants-Appellants.

---

Appeals from the United States District Court
for the Southern District of Texas

---

Before GARWOOD, SMITH, and CLEMENT, Circuit Judges.

PER CURIAM:

Ronald Norman (Norman)[1] and Glenn Edward Scott (Scott) appeal their convictions for conspiracy to possess with intent to distribute a controlled substance and possession with intent to distribute of a controlled substance. We affirm the convictions.

---

[1]Norman told the probation officer preparing his presentence report that his true name is Ronnie Ray Norman.

**Facts and Proceedings Below**

The Drug Enforcement Administration (DEA) began an investigation of Scott after a confidential informant identified him as a possible drug dealer.  At the behest of his controlling DEA agent, the informant set up a meeting with Scott for the evening of September 25, 2002, at a gas station on Interstate Highway 10 in Houston.  The informant was wired with an audio transmitter which was monitored by one of the team of DEA agents assigned to the investigation, who then relayed by radio to the other agents information obtained from the transmission.  The scene at the gas station was periodically observed by an agent who drove past every few minutes.

After the informant, whom the agents had ascertained had no drugs on his person or in his car, arrived at the gas station in his vehicle, two other cars arrived. A person later identified as Scott got out of one of the cars and into the informant's vehicle. Scott and the informant decided to move to a McDonald's restaurant on the other side of the interstate to complete the deal, whereupon Scott opened the door of the vehicle and instructed someone he called "Randy" to "go by my apartment and pick up that stuff," and to come meet them at the McDonald's.  All of the vehicles were observed leaving the gas station, with the informant's vehicle and one of the cars heading over to the McDonald's, while the other car went in a different direction.

A DEA agent with binoculars was in a car parked next door to the McDonald's when the informant's vehicle arrived there. After a few minutes, the agent saw the person he later identified as Scott get out of the informant's vehicle and walk up to the hood of the informant's vehicle. A person the agent later identified as Norman walked up and met Scott at the hood of the informant's vehicle. Both men walked over near the front passenger side window. *Id.* at 389. The surveillance agent later testified that the men appeared to be conversing, and the audio transmission included an exchange between the informant, Scott, and a person Scott called "Ronnie," later identified as Norman. In this exchange, "Ronnie" tells Scott that he left Scott's car "at the house," and that he ran over to the McDonald's. There is a footbridge over the interstate with one end near the McDonald's and the other end near an apartment complex on the other side of the interstate. The surveillance agent did not see an actual handoff of anything from Norman to Scott; the mens' lower bodies were generally blocked from view by the vehicle.

After the meeting broke up, the DEA agents recovered a paper bag from the informant. The bag was subsequently determined to contain 212.8 grams of cocaine base (crack cocaine). Scott was not apprehended after this deal because the agents hoped to orchestrate a larger drug sale on October 8, 2002. Scott was arrested on October 8 after the larger sale fell through, and voluntarily told

agents that he was involved in the September 25 sale to the informant. The agents got Ronnie Norman's name from Scott's confession and through registration records of the cars present for the September 25 deal.[2] Norman spoke with the agents in an unrecorded interview on October 25, 2002, where he admitted going to the gas station to provide protection for Scott. According to the agents' testimony, he further admitted that he went to an apartment where he was handed a paper bag, and that he delivered the bag to the McDonald's. Norman told the agents that he thought the bag had contained either money, "weed," or cocaine. Based on their discussions with Scott and Norman, two agents identified Scott's and Norman's voices on the taped audio transmission from the September 25 transaction.

Norman was subsequently arrested, and he and Scott were charged with (1) conspiring to possess with intent to distribute 50 grams or more of cocaine base, and (2) aiding and abetting one another in possessing with intent to distribute 50 grams or more of cocaine base, under 21 U.S.C. §§ 841, 846. At trial, both Norman and Scott objected to the admission into evidence of the agents' identification of their voices on the tape recording of the September 25 audio transmission, but their objections were overruled. Scott attempted to use a Justice Department manual on

---

[2]Since neither Norman nor Scott testified at trial, the jury was not told of any mention of his co-defendant in either defendant's confession. *See Bruton v. United States*, 88 S.Ct. 1620, 1622–23 (1968).

4

eyewitness identification in cross-examining some of the DEA agents. Such use of the manual was precluded for not meeting the requirements of Rule 803(18) of the Federal Rules of Evidence. The jury found both Scott and Norman guilty of both counts. Scott was sentenced to 235 months' imprisonment, and Norman to 120 months.[3]

## Discussion

Norman argues that his confession to the DEA agents was not corroborated and was therefore inadmissible, that there was insufficient evidence that he knew he was transporting a controlled substance, and that the identification of his voice on the tape recording should have been excluded. Scott appeals the district court's denial of his use in cross-examination of the Justice Department identification guide.

### I. Standard of Review

A district court's evidentiary rulings are reviewed for abuse of discretion, subject to the harmless error rule. *United States v. Valentine*, 401 F.3d 609, 616 (5th Cir. 2005). In reviewing sufficiency of the evidence in a jury trial, we consider whether a rational jury, viewing the evidence in the light most

---

[3]The district court adopted the probation officer's assessment that Norman had a minor role in the conspiracy, resulting in a sentence at the statutory minimum of 120 months.

favorable to the prosecution, could have found the defendant guilty beyond a reasonable doubt.[4] *United States v. Miles*, 360 F.3d 472, 476–77 (5th Cir. 2004).

## II. *Norman's Conviction*

### A. Corroboration of Confession

With respect to Norman's argument that his confession was not corroborated, it is true that a defendant may not be convicted solely on the basis of his uncorroborated confession. *United States v. Deville*, 278 F.3d 500, 506 (5th Cir. 2002); *United States v. Abigando*, 439 F.2d 827, 832 (5th Cir. 1971). Instead, "[t]he government must introduce independent evidence [tending] to establish the trustworthiness of the confession." *Deville*, 278 F.3d at 506 (citing *Smith v. United States*, 75 S.Ct. 194, 199–200 (1954); *Opper v. United States*, 75 S.Ct. 158, 164 (1954)). The government need not introduce independent evidence on every element of the crime, however. *Abigando*, 439 F.2d at 832. "If there is extrinsic evidence tending to corroborate the confession, the confession as a whole is admissible; and some elements of the offense may be proven entirely on the basis of a corroborated confession." *Deville*, 278 F.3d at 507 (quoting *United States v. Gravitt*, 484 F.2d 375, 381 (5th Cir. 1973)).

---

[4]The defendants properly preserved this issue by moving for a judgment of acquittal at the close of the government's evidence. The defense did not present any evidence.

In the case of Norman's confession, there is sufficient independent evidence tending to establish its trustworthiness. This evidence includes testimony that the informant received the paper bag containing the cocaine base and that Norman was seen meeting Scott at the McDonald's, as well as the audio tape in which a voice identified as Scott's instructs someone to "pick up that stuff" and go to the McDonald's.[5] All of this evidence corroborates aspects of the confession, and tends to establish its trustworthiness. The confession was therefore sufficiently corroborated.

B. *Sufficiency of the Evidence*

Norman further argues that because his confession indicated that he thought the bag he delivered might have contained money, there was insufficient evidence to show that he was involved with the knowing or intentional possession of a controlled substance as required by 21 U.S.C. § 841.[6] "In order to prove conspiracy to possess and distribute drugs, the Government must prove beyond a reasonable doubt: (1) the existence of an agreement between two or

---

[5]This instruction on the tape is directed to "Randy," but the jury was told that Ronnie Norman has a brother Randy, and that one of the cars at the gas station was registered to Randy Norman. A rational jury could have inferred that Scott simply misspoke, referring to Ronnie as Randy.

[6]21 U.S.C. § 841(a) provides:
"(a) Unlawful acts
    Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally–
        (1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute or dispense, a controlled substance; or
        (2) to create, distribute, or dispense, or possess with intent to distribute or dispense, a counterfeit substance."

more persons; (2) the defendant's knowledge of the agreement; and (3) the defendant's voluntary participation in the conspiracy." *United States v. Tenorio*, 360 F.3d 491, 494 (5th Cir. 2004). Although mere presence at a crime scene or association with conspirators is not enough to establish participation in a conspiracy, *United States v. Maltos*, 985 F.2d 743, 746 (5th Cir. 1992), "[t]he agreement, a defendant's guilty knowledge and a defendant's participation in the conspiracy all may be inferred from the development and collocation of circumstances," *United States v. Lentz*, 823 F.2d 867, 868 (5th Cir. 1987) (internal quotation omitted). To prove aiding and abetting of a criminal venture, the government must show that the defendant: "(1) associated with the criminal enterprise; (2) participated in the venture; (3) sought by his action to make the venture succeed." *Tenorio*, 360 F.3d at 495. Because "[t]he evidence supporting a conspiracy conviction typically supports an aiding and abetting conviction," *id.*, we consider here the sufficiency of the evidence for the conspiracy conviction.

"Ordinarily, knowledge of the existence of drugs may be inferred from control over the location in which they are found." *United States v. Moreno*, 185 F.3d 465, 471 (5th Cir. 1999). However, if the drugs are hidden, such as in a secret compartment in luggage or a vehicle, "we require 'additional circumstantial evidence that is suspicious in nature or demonstrates guilty

8

knowledge.'" *Id.* (quoting *United States v. Ortega Reyna*, 148 F.3d 540, 544 (5th Cir. 1998)). It is clear that drugs inside a hand carried paper bag that Norman had complete control of and believed to contain drugs or money do not qualify as "hidden" for this purpose. Even if they are considered hidden, however, there was ample additional evidence indicating knowledge on the part of Norman.

Norman admitted that he had gone to the gas station to provide protection, from which the jury could infer that Norman knew an illicit deal was taking place. Furthermore, the audiotape, coupled with Norman's admitted actions and his appearance at the McDonald's, indicates that Scott told Norman to "go get that stuff," a wording that implies prior knowledge by Norman of the deal and his role in it. The jury was also aware of an earlier incident in which a police officer saw a plastic bag thrown out of the passenger-side window of a car that Norman was a passenger in, and the bag turned out to contain nine grams of crack cocaine. This incident suggests that Norman had some familiarity with drug sales and would likely know that he was being asked to carry drugs in the September 25 sale.[7] In addition, this court has found participation in tasks vital to a conspiracy where the tasks are undertaken within a narrow time

---

[7]The jury was instructed to consider this earlier incident only for the purposes of determining state of mind or intent necessary for the crime, or whether the defendant acted out of accident or mistake.

frame to be indicative of "knowledge of, and intentional

participation in, crimes in progress." *United States v. Pruneda-*

*Gonzalez*, 953 F.2d 190, 197 (5th Cir. 1992). A rational jury

could easily discount Norman's claim that he thought the bag

might contain money in view of this other evidence. There is

therefore sufficient evidence supporting the jury's finding that

Norman was involved in the knowing or intentional possession of a

controlled substance.

### C. Identification of Norman's Voice

Norman argues that testimony by DEA agents identifying

Norman's voice on the audio tape of the drug transaction (and

identification of his voice on a transcript of the tape) should

have been excluded. Rule 901(b)(5) of the Federal Rules of

Evidence indicates that a voice may be properly identified "by

opinion based upon hearing the voice at any time under

circumstances connecting it with the alleged speaker."[8] The DEA

agents' hour-long discussion with Norman in October 2002 was

---

[8]Rule 901 of the Federal Rules of Evidence provides in relevant part:
"**Requirement of Authentication or Identification**
     **(a) General provision.** The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.
     **(b) Illustrations.** By way of illustration only, and not by way of limitation, the following are examples of authentication or identification conforming with the requirements of this rule:
 . . . .
        **(5) Voice identification.** Identification of a voice, whether heard firsthand or through mechanical or electronic transmission or recording, by opinion based upon hearing the voice at any time under circumstances connecting it with the alleged speaker.
 . . . ."

10

clearly a circumstance connecting Norman's voice with Norman, and therefore is permissible under Rule 901(b)(5). The government must additionally lay a foundation of reliability and accuracy when introducing a sound recording, however. *United States v. Cuesta*, 597 F.2d 903, 914 (5th Cir. 1979). Norman argues that the voice identified as his on the tape is too short in duration and too accompanied by background noise for a reliable identification to be made, and that the agents' identification was actually based on statements of the confidential informant and Scott, neither of whom testified. At trial, one of the two agents identifying Norman's voice testified that it would have been very hard to identify Norman based on his discussions with Norman and the tape-recorded voice alone, and indicated that corroboration by the facts in Norman's confession played a role in his voice identification. The other agent identifying Norman, on the other hand, testified that he could identify Norman *solely* by comparing his voice heard during the interview to that on the tape.

At a preliminary hearing on the voice identifications, the district court concluded that any inaudible portions of the tape were insufficient to make the tape as a whole inadmissible, and that the government's proffer included sufficient indicia of reliability for the tape to be admissible. The court stated that the question of whether there was enough of Norman's voice on the

11

tape to make an identification went to weight rather than admissibility. This conclusion was not an abuse of discretion. Not only are the requirements of Rule 901(b)(5) met, but there was other evidence, such as the visual identification of Norman and Scott's voice on the tape calling him by name, supporting the reliability of the identification. *See Cuesta*, 597 F.2d at 915; *United States v. Vento*, 533 F.2d 838, 864 (3d Cir. 1976).

We conclude that evidence identifying a voice on the tape as Norman's was properly admitted.[9]

## III.  Scott's Conviction

Scott argues that he should have been allowed to cross-examine testifying DEA agents using a Justice Department manual on eyewitness identification. In particular, Scott wanted to establish that proper procedure according to the manual is to use a photo lineup in soliciting an eyewitness identification, rather than using a single photo of the suspect. Learned treatises are exempt from the hearsay rule to the extent they are used by an expert witness or in cross-examination of an expert witness, if they are established as reliable authority. The treatise can be established as reliable authority by expert testimony, by admission of an expert being cross-examined, or by judicial

---

[9]    In any event, there is sufficient evidence supporting Norman's conviction, as discussed above, even if the identification of his voice had been excluded.  And, considering the record as a whole, we conclude there is no reasonable possibility that the jury would have acquitted had the identification of Norman's voice on the tape been excluded.

12

notice.  FEDERAL RULES OF EVIDENCE 803(18).[10]  The treatise was not established as a reliable authority because Norman did not offer an expert in this area, the testifying agents did not recognize the manual, and the court did not take judicial notice of its reliability.  Moreover, as stated by the district court, the manual was not being used in cross-examination of expert testimony.  The agents' identification testimony was merely the testimony of lay witnesses.  They simply described how they had made the identification from a photograph of Scott.  When asked on cross-examination whether they believed that adequate, they merely said they did.  None of the testifying agents claimed any special expertise in preferred methods of photo identification by witnesses or the like.

### Conclusion

For the foregoing reasons, both Norman's and Scott's convictions are

AFFIRMED.

---

[10]Federal Rules of Evidence 803 provides in relevant part:
"**Hearsay Exceptions; Availability of Declarant Immaterial**
    The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
. . . .
    **(18) Learned treatises**.  To the extent called to the attention of an expert witness upon cross-examination or relied upon by the expert witness in direct examination, statements contained in published treatises, periodicals, or pamphlets on a subject of history, medicine, or other science or art, established as a reliable authority by the testimony or admission of the witness or by other expert testimony or by judicial notice.  If admitted, the statements may be read into evidence but may not be received as exhibits.
. . . ."