# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

January 15, 2009

Charles R. Fulbruge III
Clerk

No. 07-30001

UNITED STATES OF AMERICA

Plaintiff-Appellee

v.

JUSTIN PAUL STERLING

Defendant-Appellant

Appeal from the United States District Court
for the Western District of Louisiana

Before JONES, Chief Judge, and OWEN and SOUTHWICK, Circuit Judges.

EDITH H. JONES, Chief Judge:

We are required to affirm a conviction for offenses that led inexorably to a 99-year sentence of imprisonment for a young, addicted drug dealer. This sentence exceeds, in this court's experience, what has been meted out to some drug trafficking kingpins. Why the Government chose to pile on its indictment against Sterling, especially after he pled guilty to the Mullins incident, is not ascertainable from the Pre-Sentence Report ("PSR"). This court is obliged to apply the law, but we expect that the prosecutor's nearly unfettered discretion will not be abused. Here, we are not so confident of that precondition to justice.

Based on his recanted confession, a jury convicted Justin Paul Sterling ("Sterling") of three counts of distribution of cocaine base, three counts of

possession of a firearm in furtherance of a drug trafficking crime, and one count of possession of a firearm with an obliterated serial number. Sterling appeals the drug trafficking and firearm convictions, arguing that his conviction rested solely on his uncorroborated confession. He further argues that because under the Government's theory he did not receive the firearms at the time he purchased them with drugs, he did not possess the firearms in furtherance of a drug trafficking crime. Because other evidence corroborated Sterling's confession and showed that he possessed firearms in furtherance of a drug trafficking crime, we AFFIRM.

## I. BACKGROUND

On three separate occasions within a two-month period, the police recovered handguns possessed by Sterling. On January 23, 2005, Keith Mullins approached Sterling and asked if he had any crack to sell. As Sterling broke off the requested quantity, Mullins punched him in the face and grabbed the drugs. During a struggle, Sterling drew an RG Model 14 .22 caliber revolver and shot Mullins in the hand and abdomen. Undeterred by his wounds and assisted by his wife, Mullins seized Sterling's gun, drugs, and money and escaped. Mullins reported the incident to the police and turned over the RG revolver.

The next day, after being advised of his Miranda rights, Sterling gave a written statement to the police in which he described the robbery and shooting. Sterling further explained that he purchased the revolver for $20 from a drug addict named "Wild Bill," who drove an old white camper van with a brown stripe down the side. Sterling was not arrested.

On March 1, a Calcasieu Parish Sheriff's Officer stopped Sterling as he walked along the road because he fit the description of a suspect reported to be engaged in narcotics trafficking. Sterling consented to a search, and the deputy discovered a Lorcin .380 caliber pistol in his pocket but found no drugs. Sterling was arrested, given a misdemeanor summons, and released.

Detectives eventually traced the RG revolver Sterling used to shoot Mullins and learned that it had been stolen from its registered owner in a burglary. A warrant was issued to arrest Sterling for possession of the stolen revolver. The police served the warrant and arrested Sterling on the morning of March 10 at the trailer of Renata Guillory. As police moved Sterling from the couch where he was sleeping, they discovered he was lying atop a Bryco .380 caliber pistol. The serial number on the gun had been scratched off.

In a videotaped interview, Sterling explained to the police that he purchased all three pistols from "Wild Bill" in exchange for crack cocaine. As in his previous statement, he explained that Wild Bill lived in Sulphur and drove a white camper with a brown stripe. When Wild Bill would drive around the neighborhood, Sterling would ask him about buying a pistol and immediately furnish the crack. Sterling could later retrieve the gun from under a trash can. Sterling provided a detailed description of Wild Bill and his vehicle.

Following this confession, the Government charged Sterling with one count of possession of cocaine base with attempt to distribute arising out of the attempted sale to Mullins, 21 U.S.C. § 841 (b)(1)(A); one count of possession of a firearm in furtherance of a drug trafficking crime for using the .22 revolver to defend his drugs from Mullins, 18 U.S.C. § 924 (c)(1)(A)(iii); three counts of distribution of cocaine base for giving crack to Wild Bill, 21 U.S.C. § 841 (b)(1)(c); three counts of possession of a firearm in furtherance of a drug trafficking crime for purchasing the pistols with crack, 18 U.S.C. § 924 (c)(1)(c)(i); and one count of possession of a firearm with an obliterated serial number because of the Lorcin .380, 18 U.S.C. § 922(k) .

Sterling pled guilty to the counts involving the incident with Mullins, but he repudiated his earlier statement to the police and proceeded to trial on the other counts. During the trial, the Government played Sterling's videotaped confession and introduced his written statement. The Government additionally

presented Federal Rule of Evidence 404(b) evidence that on January 11, 2005, Sterling possessed 0.59 grams of crack cocaine, an atypically large amount for a crack addict but a normal amount for a street dealer.

Sterling took the stand and testified that he made up the entire story about Wild Bill. He did not purchase guns with crack—his friends gave or loaned them to him. Sterling said he was under the influence of ecstasy at the time of the interview and said he lied to protect the people who gave him the guns and, in the case of the Bryco .380, the gun's actual owner.

In rebuttal, a Sulphur police officer testified that a person in Sulphur goes by the name "Wild Bill Elliot" and that someone named "Greg Elliot" owned a gun store near Sulphur. He drew no connection between Sterling and either Wild Bill or Greg Elliot, and neither Elliot appeared as a witness.

The jury convicted Sterling on all counts. On March 1, 2006, Sterling filed a motion for a judgment of acquittal or, alternatively, a new trial because he could not be convicted solely on the basis of his uncorroborated confession. After denying Sterling's motion, the district court sentenced him to a total of 99 years in prison, including the sentence for counts to which he pled guilty. Sterling appeals.

## II. CORROBORATION REQUIREMENT

Sterling argues that his conviction for the drug trafficking and firearm offenses rests solely on his videotaped confession. Under a longstanding rule of criminal law, an accused may not be convicted on the basis of his uncorroborated extrajudicial confession. Although commentators doubt the need for this rule, particularly following the development of Fifth Amendment protections,[1] the

---

[1] See, e.g., 1 McCormick On Evid. § 145 (Kenneth S. Broun, ed., 6th ed. 2006) ("Given the development of other confession law doctrines, especially Fifth Amendment protections as promulgated in Miranda and the voluntariness requirement, concerns regarding law enforcement interrogation practices do not provide significant support for the corroboration requirement.").

Supreme Court has held that the requirement applies even to crimes where no tangible injury results. Smith v. United States, 348 U.S. 147, 154, 75 S. Ct. 194, 198 (1954). We treat this argument as a challenge to the sufficiency of the evidence,[2] which we review de novo without deference to the district court.

The federal courts do not apply the traditional common-law corpus delicti doctrine, which required independent evidence to establish the occurrence and criminal cause of the injury. "[C]orroborative evidence need not be sufficient, independent of the statements, to establish the corpus delicti." Opper v. United States, 348 U.S. 84, 93, 75 S. Ct. 158, 164 (1954). The Government may instead introduce "substantial independent evidence which would tend to establish the trustworthiness of the statement." Id. In analyzing the corroboration requirement, this court examines the confession as a whole: "If there is extrinsic evidence tending to corroborate the confession, the confession as a whole is admissible." United States v. Deville, 278 F.3d 500, 507 (5th Cir. 2002) (quoting United States v. Gravitt, 484 F.2d 375, 381 (5th Cir.1973)). Additionally, where there is no tangible proof of injury to person or property, the corroborative evidence must tend to connect the accused with the crime. Wong Sun v. United States, 371 U.S. 471, 491 n.15, 83 S. Ct. 407, 419 n.15 (1963); United States v. Abigando, 439 F.2d 827, 832 (5th Cir. 1971).

This court does not determine the truth of Sterling's confession. The factfinder must still weigh the confession against the later denial, determine which it finds credible, and ask, as always, whether the Government proved

---

[2] The D.C. Circuit, perhaps more accurately, characterizes the corroboration requirement as "something of a hybrid rule having elements both of admissibility and sufficiency." United States v. Dickerson, 163 F.3d 639, 642 (D.C. Cir. 1999). The requirement makes an odd sufficiency rule because it accords no deference to the factfinder and simply evaluates whether a particular piece of evidence may be considered. But as a rule of admissibility, the corroboration requirement also answers the evidentiary sufficiency question—where the independent evidence fails to meet the lesser standard to allow the confession to be used against the accused, it also fails the greater standard for conviction.

guilt beyond a reasonable doubt. The court merely determines whether sufficient evidence supports the confession to allow the factfinder to consider it.

Although the police could have gone much further in uncovering independent evidence supporting Sterling's confession (most obviously and most effectively, by locating Wild Bill), the confession includes many facts known to be true. First, Sterling actually possessed the weapons that he claimed to have purchased from Wild Bill. The corpus delicti requirement was intended to bar confessions to fictitious crimes—if Sterling had told the police that he had purchased a gun with crack but no gun was found, lack of corroboration would almost certainly prevent his conviction. See Bremerton v. Corbett, 723 P.2d 1135, 1139 (Wash. 1986) (discussing the basis for the corpus delicti requirement). Possession of the firearms establishes that Sterling's account of acquiring the weapons is not wholly a fabrication. These firearms also satisfy the requirement of connecting Sterling to the crime.

Second, Sterling's possession of crack cocaine on other occasions corroborates his account of purchasing the handguns with crack cocaine. The Government presented evidence that police found dealer-quantities of crack on Sterling on January 11, and Sterling confessed in court to attempting to sell crack to Mullins. These support Sterling's admission that he had access to crack cocaine and makes it far more believable that he traded it for guns.

Moreover, Sterling's confession discusses the incident between himself and Mullins on January 23. Sterling confirmed the truth of this part of his statement when he pled guilty to the charges arising out of this incident. Sterling also reported consistently about Will Bill in each of his statements to the police. Given the close connection between the counts, Sterling cannot divide his statement into separate counts and demand corroboration for each particular piece. See Deville, 278 F.3d at 507 ("The details of the drug trafficking crime . . ., most of which were independently corroborated with extrinsic evidence at trial,

corroborate the firearm offense."). Instead, this court looks to the statement as a whole—pleading guilty to crimes confessed to in some portion of the statement, and speaking consistently about other crimes on two occasions, tends to establish the trustworthiness of the statement as a whole.

Finally, although Sterling's confession does not "demonstrate [ ] knowledge of the time, place, or method of the offense," Abigando, 439 F.2d at 832, because the Government did not independently establish a time, place, or method for the offenses, the detailed nature of the confession provides an additional degree of corroboration. United States v. Gresham, 585 F.2d 103, 106 (5th Cir. 1978). Sterling described when and how he would meet with Wild Bill, how much he paid for the guns, the specific location where he would retrieve the pistols, and the appearance of Wild Bill and his vehicle. This contrasts with United States v. Reynolds, 367 F.3d 294 (5th Cir. 2004), where the defendant simply told the police that he "always" carried a gun, and did not confess that he used or carried the gun during bank robberies.

Sterling may well have lied to the police in his confession. A jury would not have acted irrationally by believing his recantation and finding him not guilty. But the criminal justice system does not generally protect defendants from themselves. Sterling told the police that he committed particular crimes, but he later recanted this confession. A jury heard both confession and recantation and concluded beyond a reasonable doubt that Sterling committed the crimes to which he confessed. Sufficient independent evidence corroborating the confession existed to allow the jury to fulfill this function.

### III. FURTHERANCE OF A DRUG CRIME

Sterling argues that, even if his confession is sufficiently corroborated, his trading crack for firearms did not violate § 924(c) because the exchange was not contemporaneous. Sterling did not raise this argument before the district court—he objected only to evidentiary sufficiency based on the failure to

corroborate his confession. This assertion of specific other grounds waives the objection, United States v. Herrera, 313 F.3d 882, 884–85 (5th Cir. 2002) (en banc) (per curiam), and the conviction will be reviewed for manifest miscarriage of justice and sustained unless the record is devoid of evidence pointing to guilt. United States v. Avants, 367 F.3d 433, 449 (5th Cir. 2004).

Although the Supreme Court has not directly addressed the issue,[3] two circuits have issued published opinions holding that bartering drugs for guns constitutes "possession in furtherance" under § 924(c)(1)(A). See United States v. Luke-Sanchez, 483 F.3d 703, 706 (10th Cir. 2007); United States v. Frederick, 406 F.3d 754, 764 (6th Cir. 2005). Sterling does not challenge the general principle that bartering drugs for guns can constitute "possession in furtherance" but instead argues that because he did not receive the guns until after he provided the crack, the guns could not have furthered the drug trafficking offense. We thus assume, without deciding, that bartering drugs for guns constitutes "possession in furtherance" of a drug trafficking offense and examine whether the transfer of weapons need be contemporaneous.

The Tenth Circuit in Luke-Sanchez explained the rationale for holding that the purchase of weapons with drugs constitutes possession in furtherance:

> [T]he pistols were akin to any other form of currency used to pay for illegal drugs, all of which further and promote drug trafficking by sustaining the drug market. Accordingly, the nexus between the drugs and the guns used to pay for them is sufficient, as a matter of law, to meet the "in furtherance" prong of § 924(c).

483 F.3d at 706. Thus, the handguns furnished by Wild Bill functioned as the currency used to purchase illegal drugs from Sterling. Assuming that trading drugs for weapons constitutes possession in furtherance, drug traffickers cannot escape liability simply by structuring their transactions to arrange for later

---

[3] The Supreme Court expressly left this question open in Watson v. United States, 128 S. Ct. 579, 585–86 (2007).

delivery of the firearms. Based on his confession, the record is not devoid of evidence that Sterling possessed firearms in furtherance of a drug trafficking offense under § 924(c).

## IV. SENTENCING

Sterling additionally argues that the 25-year minimum consecutive sentence applicable to a "second or subsequent conviction" is a recidivism provision that requires an intervening conviction between the commission of the earlier and later offenses. He acknowledges that this argument is foreclosed by Deal v. United States, 508 U.S. 129, 113 S. Ct. 1993 (1993), and seeks only to preserve it for further appeal.

## V. CONCLUSION

Independent corroboration of Sterling's confession, although minimal, tended to establish its truthfulness and is sufficient to allow the jury's verdict to stand. If trading drugs for guns constitutes possession of a firearm in furtherance of a drug trafficking crime, then it is irrelevant whether the guns were delivered contemporaneously with or following the drug transfer. The record is not devoid of evidence that Sterling possessed firearms in furtherance of drug trafficking crimes.

The judgment is AFFIRMED.