United States Court of Appeals
Fifth Circuit

**F I L E D**

**April 14, 2004**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 03-10331
_____

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

GREGORY MARCUS REYNOLDS,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Northern District of Texas
_____

Before JOLLY, HIGGINBOTHAM, and DeMOSS, Circuit Judges.

PER CURIAM:

Gregory Marcus Reynolds was convicted on four counts of bank robbery, in violation of 18 U.S.C. § 2113(a), and four corresponding counts of carrying and possessing a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(i). The principal issue before us pertains to Reynolds's appeal of his conviction on the four counts under section 924(c)(1).[1]

_____

[1] Reynolds raises two additional issues on appeal, including: (1) whether there was sufficient evidence to establish venue for each conviction count; and (2) whether the district court erred when it denied Reynolds's motion to suppress his statement to arresting officers.

From May 10 to May 16, 2002, Reynolds robbed three Texas banks. On September 9, 2002, Reynolds returned to the first bank that he had robbed and robbed it a second time. Each of the bank tellers who were robbed testified that Reynolds would enter the bank, hand the teller a white bag that had brief instructions written on it to fill the bag, and then escape with the money. None of the tellers or the other witnesses present indicated that Reynolds used or carried a firearm during any of the robberies.

On September 16, 2002, Reynolds was arrested in a game room, whereupon officers found a fully loaded semi-automatic pistol in his left front pants pocket. A plain white bag was found in Reynolds's right front pants pocket and additional white bags were recovered from his car. After Reynolds was taken into custody, he was advised of his rights on two separate occasions. Reynolds thereafter indicated a willingness to talk with the officers and proceeded to provide details of each robbery. Reynolds stated to the officers that he "always" carried the seized pistol with him, but that he never intended to use the gun on his victims or the police, but instead on himself in the event he was caught. Reynolds, however, was never directly asked, nor did he specifically admit to, carrying the gun during any of the bank robberies. During the interview, Reynolds also indicated that he used methamphetamine. However, the FBI agent and the Arlington Police Department officer who interviewed Reynolds both testified

that Reynolds did not appear to be under the influence of drugs or alcohol during the interview.

A superseding indictment charged Reynolds with four counts of bank robbery, in violation of 18 U.S.C. § 2113(a), and four counts of carrying a firearm during and in relation to the commission of a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(i).[2] Reynolds filed a motion to suppress his post-arrest statement, arguing that his drug use rendered his statement involuntary. After an evidentiary hearing, the district court denied Reynolds's suppression motion. The case was heard before a jury for two days. Reynolds filed a motion for a judgment of acquittal at the close of the government's case and reurged the motion after the close of all the evidence. The district court denied both motions. The case was eventually submitted to the jury, which found Reynolds guilty on all counts.

The district court sentenced Reynolds to a total aggregate term of 1033 months' imprisonment, five years' supervised release, and other terms and conditions. With regard to the robbery counts, Reynolds was sentenced to concurrent terms of 73 months' imprisonment on counts one, three, five, and seven. On count two, the first weapons count, Reynolds was sentenced to a mandatory 60 months' imprisonment, which was to run consecutively to the

---

[2] A superseding indictment was filed to correct an error in the original indictment that contained an erroneous address for one of the banks Reynolds was charged with robbing.

other prison terms.  On each of counts four, six, and eight, the remaining weapons counts, Reynolds was sentenced to serve 300 months' imprisonment for each count, to run consecutively to each other and to all other prison terms imposed.  In other words, Reynolds was sentenced to a combined total of approximately six years for the four robbery counts and a combined total of eighty years for the four firearm counts.  After sentencing, Reynolds filed a timely notice of appeal.  In this appeal, he principally argues that there was insufficient evidence to support his conviction on the four counts of carrying a firearm during and in relation to the commission of a crime of violence.  He also contends that the district court should have suppressed his confession because it was made involuntarily.[3]

## II

Reynolds argues that the evidence is insufficient to sustain his conviction on the four counts of carrying a firearm during and in relation to a crime of violence.  Specifically, he asserts that the evidence submitted at trial was insufficient to establish that

---

[3]In this appeal, Reynolds also asserts that there is insufficient evidence supporting his conviction on all eight counts because none of the witnesses testified at trial that any of the crimes occurred in the Fort Worth Division of the Northern District of Texas.  This assertion, however, is plainly incorrect and deserves no serious consideration.  At trial, there was direct testimony, elicited from FBI Special Agent Farrell, who arrested and questioned Reynolds, establishing that each of the four banks that were robbed are located in the Northern District. Consequently, Reynolds's argument that there was insufficient evidence establishing venue fails.

4

he carried a firearm during his commission of the bank robberies in question.

When reviewing the sufficiency of the evidence, this court views all evidence, whether circumstantial or direct, in the light most favorable to the government with all reasonable inferences to be made in support of the jury's verdict. United States v. Moser, 123 F.3d 813, 819 (5th Cir. 1997) (quotations omitted). The evidence is sufficient if, when "viewed in the light most favorable to the verdict [it] would permit a rational trier of fact to find [the defendant] guilty beyond a reasonable doubt." United States v. Pankhurst, 118 F.3d 345, 352 (5th Cir. 1997).

The government acknowledges that it lacks any direct evidence, testimonial or otherwise, that Reynolds actually carried a gun during the commission of these crimes. However, it argues that this fact can be inferred from the statements he made during questioning when he was arrested. Specifically, Reynolds said that he "always had that gun with him," that "he never intended to use the gun either on a victim teller or on the police, but on himself in the event that he got caught," and that "he always carried the gun with him because he knew that the police officers always had their guns with them."

There is a problem with relying on these statements, however. In Smith v. United States, 348 U.S. 147, 152 (1954), the Supreme Court announced that a defendant generally cannot be convicted solely on his uncorroborated confession. While acknowledging that

5

the corroboration rule may not apply to every admission by a defendant, the Court indicated it at least applied where "the admission is made after the fact to an official charged with investigating the possibility of wrongdoing, and the statement embraces an element vital to the Government's case." Id. at 155; see also United States v. Ybarra, 70 F.3d 362, 365 (5th Cir. 1995). Reynolds's admissions here not only meet these conditions, they present an even more compelling case for applying the Smith rule, given the fact that he never directly confessed specifically to the crime for which he was convicted. As such, we find it necessary to apply Smith's rule here and hold that Reynolds cannot be convicted on the basis of his confession alone unless it is corroborated.[4]

The government contends that Reynolds's confession was corroborated by the trial testimony of his girlfriend, Cindy Childress, who testified that Reynolds told her "the gun was close by, always" during the robberies. However, we note that Childress

---

[4]In arguing that Smith's rule should not apply to this case, the government cites this court's decision in United States v. Deville, 278 F.3d 500 (5th Cir. 2002). There we upheld a conviction for carrying a firearm during and in relation to a drug trafficking offense that was primarily based on the defendant's confession that he had carried a firearm while committing the crime. Id at 507. Deville can be distinguished, however. First, the defendant in Deville unambiguously and directly confessed to carrying the gun during the crimes at issue there. Id. Here, Reynolds's confession must be circumstantially inferred from indirect statements he made about his carrying of the gun. Second, this court found that the Deville defendant's clear confession was adequately corroborated by extensive extrinsic evidence related to the "intertwined" underlying drug trafficking offense. Id. at 506-07. In contrast, as noted above, we find no such corroborating evidence here.

also testified that Reynolds told her he did not use the gun in any of the bank robberies. We do not believe such ambivalent testimony serves as corroboration for the unspecific confession made by Reynolds. There being no other evidence that would corroborate Reynolds's admissions, we hold that the evidence is insufficient to support his convictions for carrying a firearm during the commission of a crime of violence. Accordingly, we REVERSE and VACATE his convictions and sentences on these counts.

III

Reynolds next contends that his having taken methamphetamine an hour before he was arrested and not having slept for three days at the time of his arrest made his confession to the arresting officers involuntary. "When a defendant challenges the voluntariness of a confession, the government must prove its voluntariness by a preponderance of the evidence in order for the confession to be admissible as substantive evidence at the defendant's criminal trial." United States v. Garcia Abrego, 141 F.3d 142, 170 (5th Cir. 1998).

In reviewing a ruling on a motion to suppress a confession, we give credence to the credibility choices and fact finding by the district court unless they are clearly erroneous; the ultimate issue of voluntariness, however, is a legal question reviewed de novo. United States v. Solis, 299 F.3d 420, 439 (5th Cir. 2002) (citation and quotation omitted). The voluntariness of a confession depends on whether, under the totality of the

circumstances, the statement is "the product of the accused's free and rational choice." <u>Garcia Abrego</u>, 141 F.3d at 170 (citation and quotation omitted). We have also said that "coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment." <u>Id.</u> (quoting <u>Colorado v. Connelly</u>, 479 U.S. 157, 167 (1986)).

In <u>Muniz v. Johnson</u>, 132 F.3d 214, 220 (5th Cir. 1998), the defendant argued that his fatigued physical and emotional condition at the time of his confession made him more susceptible to coercion, thus making his confession involuntary. The court determined that there was "nothing in the record to suggest that he complained to the officers about his fatigue; that he requested additional time to rest; or that the officers conditioned additional rest time on receiving his confession." <u>Id.</u> The court concluded that the confession was not coerced and therefore was voluntary. <u>Id.</u>

In <u>Solis</u>, the defendant maintained that because he took speed about an hour before he was taken into custody, his confession should have been suppressed. 299 F.3d at 438-39. The investigating officer testified that the defendant, after being given his <u>Miranda</u> warnings, responded that he understood the nature of the warnings and indicated a willingness to talk with the officers. <u>Id.</u> at 340. Moreover, the same officer testified that there was no indication that the defendant was under the influence

8

of any controlled substances and that the defendant demonstrated an awareness of the questions being asked and was responsive. Id. Based on this information, the court affirmed the district court's finding that the defendant's confession was voluntary. Id.

In Garcia Abrego, the defendant argued that because he was given tequila, blood pressure medicine, and Valium by Mexican authorities before he was handed over to U.S. authorities for questioning, his subsequent confession was rendered involuntary. 141 F.3d at 170. The court found that:

> The record contains ample evidence from which the district court could conclude that the drugs that Mexican authorities administered to Garcia Abrego did not impair his mental capacity. Dr. Coleman's testimony that Garcia Abrego did not appear impaired and evinced none of the symptoms of a Valium overdose, together with the testimony of the officers who interviewed Garcia Abrego that he appeared in no way impaired, provided an adequate basis for the district court's conclusion that Garcia Abrego's mental capacity was not impaired as a result of the drugs that he had been administered earlier in the day.

Id. Finding the defendant's confession was voluntary, the court concluded that the district court did not err in denying the defendant's motion to suppress. Id. at 170-71.

In the instant case, the FBI special agent investigating the case testified that after Reynolds was advised of his rights and acknowledged that he understood those rights, he further indicated a willingness to talk with the authorities. Trial testimony reveals that throughout the interview, Reynolds was cooperative,

9

listened to questions, and responded appropriately. Reynolds provided the special agent and the detective with a detailed account of each of the robberies, even going as far as giving a description of each of the tellers who was robbed and the amounts taken. There was also testimony that Reynolds sat erect in his chair, looked at the questioning officer as each question was posed, responded directly to those questions, and provided information in a logical manner. Both law enforcement officials who interrogated Reynolds testified that in their experience, neither believed that Reynolds was under the influence of any drug or alcohol.[5] Based on these facts, it is clear that the government has established by a preponderance of the evidence that Reynolds's confession was made knowingly and voluntarily. Accordingly, the district court did not err in denying Reynolds's motion to suppress the statements he made to the arresting officers. We therefore AFFIRM his convictions on each of the bank robbery counts.

## CONCLUSION

Having carefully considered the record of this case, the parties' respective briefing and arguments, and for the reasons set forth above, we hold that the record does not provide a sufficient basis upon which a rational juror could conclude beyond a reasonable doubt that Reynolds carried a firearm during and in

---

[5] Moreover, Reynolds admitted at the suppression hearing that he never told the officers that he was too tired to talk or that any of the questioning was abusive.

10

relation to a crime of violence pursuant to section 924(c)(1). We therefore REVERSE and VACATE Reynolds's convictions and sentences on the four counts under section 924(c)(1). However, because we hold that Reynolds's post-arrest statements were voluntary, we AFFIRM his convictions on each of the bank robbery counts under section 2113(a). Finally, because of our reversal of the convictions on the firearms counts, and the consequent vacatur of the sentences therein, we VACATE the entire sentence and REMAND for resentencing.

AFFIRMED in part, REVERSED and VACATED in part, and REMANDED.

11