United States Court of Appeals
Fifth Circuit

**F I L E D**

September 12, 2006

Charles R. Fulbruge III
Clerk

**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 05-20158

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MARIA DOLLY HERNANDEZ,

Defendant-Appellant.

Appeal from the United States District Court
for the Southern District of Texas

Before GARZA, DEMOSS, and STEWART, Circuit Judges.

PER CURIAM:[*]

Appellant Maria Dolly Hernandez appeals her conviction and sentence for possession of heroin with the intent to distribute and conspiracy to possess heroin with the intent to distribute, 18 U.S.C. § 2; 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(i). She contends that her confession, given after she received *Miranda* warnings, should be suppressed because of a similar confession made before she was given *Miranda* warnings. She also argues that she was wrongly denied a

[*]Pursuant to 5th Cir. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.

1

reduction in her sentence under U.S.S.G. § 5C1.2's safety valve provision. For the following reasons, we affirm the judgment and sentence of the district court.

## I. FACTUAL AND PROCEDURAL HISTORY

On May 2, 2003, Hernandez and her son and codefendant, Giovanny Jaramillo, attempted to fly from Houston's Hobby Airport to Atlanta. While passing through the Transportation Security Agency ("TSA") security screening point, Hernandez was selected for random secondary screening. As part of the secondary screening, a wand designed to alert to metal was waived over Hernandez's body, and the wand alerted to an object at Hernandez's waist. When the TSA screener asked to see the area, Hernandez said no and asked for her daughter. The screener, following the protocol for when a passenger refuses to cooperate during secondary screening, called the Houston Police Department ("HPD").

HPD Officer Gomez arrived on the scene and questioned Hernandez, who again requested to speak to her daughter. Officer Gomez refused the request, telling Hernandez that she could not use her cell phone until she allowed them to inspect the area that caused the wand to beep. Hernandez then showed the officer a girdle with metal pieces she was wearing under her clothes. Officer Gomez asked if he could touch the area, and Hernandez consented. After feeling what seemed to be a little box, he told Hernandez that in order to board her flight, she would have to go to "the back" where a female officer would conduct further screening.

In a small room off of the general screening area, Hernandez and Officer Gomez were joined by HPD Officer Susan Buchanan and two TSA employees. Jaramillo remained in the general screening area. Officer Gomez told Hernandez that her plane was still on the ground but they had to know what she had on her person "before we go any further." Hernandez then lifted

2

her blouse, showing Officer Buchanan what she recognized as ampules containing a narcotic. Hernandez told Officer Gomez that she was carrying some type of narcotic.

Officer Buchanan took Hernandez to the HPD station located at Hobby Airport. Officer Robinson was then called to assist in the investigation. The officer recognized the ampules as the type commonly used to smuggle heroin. Before Officer Robinson questioned Hernandez, he read her *Miranda* rights to her, stopping after each line to confirm that she understood her rights. This was the first time that Hernandez was read her rights in relation to this incident. He then asked her if she knew she was carrying contained narcotics, and she answered that she did, although she denied knowing what type of drug she was carrying.

Testing on the substance in the ampules confirmed that it was heroin. Afterwards, Hernandez was charged by indictment with possession of heroin with the intent to distribute and conspiracy to possess heroin with the intent to distribute. She filed a motion to suppress all statements that she made to HPD officers on May 2, 2003. The district court suppressed all statements that she made before she was read her *Miranda* rights but did not suppress the statements she made to Officer Robinson after he gave her a *Miranda* warning.

Hernandez was convicted of both counts and then sentenced by the court to concurrent terms of 120 months of imprisonment on each count and five years of supervised release. The district court refused to grant Hernandez a reduction in her sentence under U.S.S.C. § 51C.2, the so-called "safety valve" provision that allows a defendant to escape the applicable statutory minimum sentence if the court finds that she satisfies five criteria. At issue here is whether Hernandez met the fifth criterion: "truthfully provid[ing] to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan . . . ." § 5C1.2(a)(5).

3

Hernandez claims that the government refused to meet with her because she was not believed to be trustworthy. Because she could not communicate with the government directly, Hernandez instructed her lawyer to prepare and submit to the district court a "formal statement" that stated what Hernandez's counsel "anticipated" she would say to the government. The court denied Hernandez's request for the application of the safety valve based on its determination that the information she provided was not credible. Hernandez then timely filed the present appeal.

## II. STANDARD OF REVIEW

This court reviews the district court's factual findings for a motion to suppress a confession for clear error and reviews its legal conclusions, including whether a defendant waived her *Miranda* rights, de novo. *United States v. Cardenas*, 410 F.3d 287, 292 (2005). We also review the district court's interpretation and application of the Sentencing Guidelines de novo and its factual findings, including credibility findings, for clear error. *United States v. Villanueva*, 408 F.3d 193, 203 & n.9 (5th Cir. 2005), *cert. denied*, 126 S.Ct. 268 (2005); *United States v. Bell*, 367 F.3d 452, 461 (5th Cir. 2004).

## III. DISCUSSION

### A.

Hernandez argues that the district court erred when it did not suppress her post-*Miranda* confession because of the existence of her pre-*Miranda* confession under the Supreme Court's ruling in *Missouri v. Seibert*, 542 U.S. 600 (2004). In *Seibert*, Justice Kennedy, concurring with a plurality of 4 other Justices, held that a post-*Miranda* statement given after pre-*Miranda* statements should be judged under the standard laid out in *Oregon v. Elstad*, 470 U.S. 298 (1985), unless the withholding of *Miranda* warnings was a deliberate strategy on the part of law

enforcement officials to circumvent the protections of *Miranda*.[1]  542 U.S. at 622 (Kennedy, J., concurring).  While the district court did not consider the specific application of *Seibert* to these facts because the case did not exist at the time of its ruling, the evidence in the record makes clear that the omission of *Miranda* rights in Officer Gomez's interactions with Hernandez was not a two-step interrogation "tactic."[2]

Seibert was charged with involvement in the murder of a teenage boy living in her home. An officer involved in questioning her stated that his withholding of *Miranda* rights until after she had already confessed was part of a deliberate strategy to solicit incriminating testimony without informing the suspect of her *Miranda* rights and then to persuade her to repeat the same testimony after *Miranda* warnings were given.  Justice Kennedy noted in particular that the interrogating officer relied on the pre-warning statements in the post-warning questioning, which

---

[1] We held in *United States v. Courtney*, No. 05-30156 (5th Cir. Aug. 28, 2006), that the holding of *Seibert* is found in Justice Kennedy's concurrence.  *See also Marks v. United States*, 430 U.S. 188, 193 (1977) ("When a fragmented Court decides a case and no single rationale explaining the result enjoys the asset of five Justices, the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds.").  Most other Circuits that have considered this issue have come to the same conclusion.  *See United States v. Ollie*, 442 F.3d 1135, 1142 (8th Cir. 2006); *United States v. Williams*, 435 F.3d 1148, 1158 (9th Cir. 2006); *United States v. Naranjo*, 426 F.3d 221, 231-32 (3d Cir. 2005); *United States v. Mashburn*, 406 F.3d 303, 309 (4th Cir. 2005); *United States v. Stewart*, 388 F.3d 1079, 1086-87 (7th Cir. 2004).  *But see United States v. Carrizales-Toledo*, 454 F.3d 1142, 1151 (10th Cir. 2006) (considering but not deciding that *Marks* might not be applicable to *Seibert* because "the plurality and concurring opinions take distinct approaches . . . .").

[2] Because it is clear from the record that considering *Seibert* would not change the district court's analysis of this case, we determine that a remand is not necessary to dispose of this appeal.  *Cf. United States v. Dixon*, 132 F.3d 192, 196 (5th Cir. 1997), *cert. denied*, 423 U.S. 898 (1998) (not necessary to remand case for re-sentencing when clear that a faulty drug conspiracy conviction did not lead the district court to impose a harsher sentence); *United States v. Ratner*, 502 F.2d 1300, 1302 (5th Cir. 1974), *cert. denied*, 423 U.S. 898 (1975) (not necessary to remand unless there is a basis for believing that the defendants would fare better under the newly announced constitutional standard).

"resembled a cross-examination." 542 U.S. at 621 (Kennedy, J., concurring). The officer "confronted" Seibert with the statements that she made prior to being given *Miranda* warnings and "pushed her to acknowledge them" when she tried to retreat from her earlier incriminating statements after being given *Miranda*. *Id*.

Hernandez's interactions with law enforcement officials, both before and after being given *Miranda* warnings, were significantly different than the interactions in *Seibert*. She was initially confronted not for the purpose of obtaining a confession while circumventing her *Miranda* rights but to protect the security and safety of a commercial air flight. Her interview with Officers Gomez and Buchanan was not part of a deliberate strategy to withhold her *Miranda* rights but instead part of the TSA's normal procedures. Hernandez's interview with Officer Robinson similarly shows no signs of the tactics employed in *Seibert*. Hernandez was not directly confronted with her prior statements, and she was asked open-ended rather than leading questions. There is no evidence in the record that the HPD officers were pursuing any kind of "deliberate strategy" that would require the suppression of the statement under *Seibert*.

Because the officers did not employ a deliberate strategy to deprive Hernandez of her protections against self-incrimination, *Elstad* applies. In *Elstad*, the Court held that as long as the initial unwarned statement was voluntary, "subsequent administration of *Miranda* warnings . . . ordinarily should suffice to remove the conditions that precluded admission of the earlier statement." 470 U.S. at 313. Here, there are two questions of voluntariness this court must consider: whether Hernandez's unwarned statements, despite being correctly suppressed, were nonetheless voluntary and, if they were, whether her waiver of her *Miranda* rights when they were given was voluntary.

Hernandez's initial pre-*Miranda* statement was voluntary. Voluntariness is determined on a case-by-case basis, and the court considers the totality of the circumstances surrounding the defendant's statement. *United States v. Reynolds*, 367 F.3d 294, 298 (5th Cir. 2004). The test for deciding if a statement is involuntary is if the tactics employed by law enforcement officials constitute a Fifth Amendment due process violation and are "so offensive to a civilized system of justice that they must be condemned." *United States v. Bengivenga*, 845 F.2d 593, 601 (5th Cir. 1988) (citing *Elstad*, 470 U.S. at 305-09).

In *Elstad*, the Court noted that the brief pre-*Miranda* questioning of the teenage defendant took place at midday in the defendant's own home with his mother in the next room; because of these factors, it was "beyond dispute" that the defendant's confession was voluntary. 470 U.S. at 315. Similarly, this court has considered many factors in the voluntariness determination, including officers taking a passenger off of a plane and conducting moderately lengthy interrogation without *Miranda*, *United States v. Mendez*, 27 F.3d 126 (5th Cir. 1994), and law enforcement officers stating that they know the suspect is guilty, *United States v. Barte*, 868 F.2d 773 (5th Cir. 1989), *cert. denied*, 493 U.S. 995 (1989).

While Hernandez's questioning in the airport differs from the indisputably non-coercive questioning at issue in *Elstad*, none of the actions by HPD officers rise to the level of a due process violation. While the questioning occurred in a semi-public place and Hernandez was faced with the pressures of missing her flight and being denied repeated requests to speak to her daughter, the law enforcement officers did not coerce her into making a statement. Because Hernandez's first statement was voluntary, the subsequent administration of her *Miranda* warnings make her post-*Miranda* statement admissible as long as her waiver of her *Miranda* rights was also voluntary. *Elstad*, 470 U.S. at 315.

7

Hernandez's waiver of her *Miranda* rights was knowing and voluntary. When a defendant challenges the voluntariness of a confession, the burden is on the government to show that a waiver of *Miranda* rights was the result of a defendant's own free and rational choice in the totality of the circumstances. *Colorado v. Connelly*, 479 U.S. 157, 163-65 (1986); *United States v. Bell*, 367 F.3d 452, 461 (5th Cir. 2004). Hernandez was read her *Miranda* warnings in Spanish and was asked to reply after each portion of the warning that she understood what her rights were; she responded affirmatively to these inquiries. Additionally, Hernandez was never verbally or physically threatened in any way, and no other factors exist in the record that might have rendered her wavier involuntary or unknowing. The government has met its burden to show that Hernandez's waiver of her *Miranda* rights was voluntary. Hernandez's post-*Miranda* statements were correctly admitted.

B.

Hernandez also appeals from the district court's determination that she does not qualify for a reduction in her sentence under U.S.S.C. § 5C1.2's "safety valve" provisions.[3] At issue in

---

[3]In order to qualify for the safety valve, a defendant must meet the following criteria:

(1) the defendant does not have more than 1 criminal history point, as determined under the sentencing guidelines before application of subsection (b) of § 4A1.3 (Departures Based on Inadequacy of Criminal History Category);

(2) the defendant did not use violence of credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;

(3) the offense did not result in death or serious bodily injury to any person;

(4) the defendant was not an organizer, leader, manager, or supervisor of others in the offense, as determined under the sentencing guidelines and was not engaged in a continuing criminal enterprise, as defined in 21 U.S.C. § 848; and

(5) not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the

this case is whether by the time of sentencing, she "truthfully provided to the Government all information and evidence [she] has concerning the offense or offenses that were part of the same course of conduct or common scheme or plan."[4] § 5C1.2(a)(5). While Hernandez claims that the government refused to meet with her before sentencing, her counsel provided a "formal statement" to the government outlining "what she basically testified to during the course of the trial."

At trial, Hernandez and her son gave testimony that conflicted with what they told officers at the Houston airport and with testimony that the officers gave at trial. Hernandez testified at trial that she believed on the morning of her arrest that her son taped money, not narcotics, around her waist before they went to the airport, despite the fact that the officers testified that she told them at the airport that she knew she was carrying drugs. She also gave conflicting accounts at the airport of how her son acquired the drugs. Her son testified at trial that he told his mother that he was taping money around her waist "so as not to pay taxes." Again, this statement directly contradicted what Jaramillo told agents at the time of his arrest: that his mother knew that she was transporting drugs that he brought into the country from Venezuela.

---

information shall not preclude a determination by the court that the defendant has complied with this requirement.

U.S.S.G. § 5C1.2(a).

[4] Hernandez also lays out a third grounds of appeal in her brief: that it was error for the district court to tell her at sentencing that she would have to waive her right to appeal if she debriefed to qualify for the safety valve. Given that at the time of sentencing it was too late for Hernandez to debrief and that Hernandez has filed this appeal, this argument is specious.

The district court held that Hernandez was not entitled to the safety valve reduction because she did not make a complete proffer to the government. The court found that Hernandez was untruthful in her testimony at trial. Because the information in the formal statement was largely the same as what Hernandez testified to at trial, the court held that it did not meet the requirements of the fifth provision of § 51C.2 and denied Hernandez the reduction. Hernandez argues that the district court should have granted her a continuance to submit a sworn statement despite the fact that the court accepted her formal statement in lieu of a debriefing. The continuance was not necessary, however, because Hernandez made a proffer that the court accepted but still deemed not credible. The court's decision that Hernandez's proffer to the government was untruthful was not clearly erroneous in light of the testimony of Hernandez, her son, and the HPD officers at trial.

## CONCLUSION

For the above reasons, Hernandez's conviction and sentence are AFFIRMED.