# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 14-30816

United States Court of Appeals
Fifth Circuit

**FILED**

May 1, 2015

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

HALSTON M. SMITH; MYLES W. ROBINSON,

Defendants - Appellants

Appeals from the United States District Court
for the Western District of Louisiana
USDC 5:13-CR-69-2

Before BARKSDALE, SOUTHWICK, and HIGGINSON, Circuit Judges.

PER CURIAM:*

After a joint jury trial in the United States District Court for the Western District of Louisiana, defendants Myles W. Robinson and Halston M. Smith were convicted of multiple federal crimes in connection with a string of armed robberies in Louisiana and Texas.

We AFFIRM.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 14-30816

## FACTUAL AND PROCEDURAL BACKGROUND

Between June and November 2012, defendants Robinson and Smith participated in numerous armed robberies and attempted armed robberies of convenience stores, restaurants, and bars, mostly in the Shreveport area. The crimes were violent. In addition to the entities robbed, the victims were usually the employees of the establishments. They were held at gunpoint while they opened cash registers and safes. More than one was threatened with being killed. One young woman was told she was going to be shot "if you don't open the register" while the robber held a gun to her head and counted down from five. In one of the robberies, a father, mother, and their two children were ordered to "get on the ground" while a shotgun was pointed at them.

As part of the investigation into the robberies, a search warrant was obtained by the Shreveport Police Department. The warrant authorized the installation of a global positioning system ("GPS") device on Smith's Dodge pickup truck, which was suspected to be involved in the robberies. The defendants were apprehended on November 14, 2012, immediately following the robbery of an Outback Steakhouse. The GPS was instrumental in the apprehension. In the early morning of November 15, while both were under arrest, Robinson and Smith spoke to law enforcement officials. The interviews were recorded. Robinson confessed to participating and wielding a firearm in fifteen robberies; Smith confessed to participating in seven. Both defendants were given their *Miranda* rights prior to speaking with the officials.

In February 2013, Robinson and Smith were named in a 27-count indictment charging conspiracy, robbery, and weapons offenses.[1] Prior to trial,

---

[1] Robinson was charged with one count of Conspiracy to Interfere with Commerce by Robbery, ten counts of Interference with Commerce by Robbery , three counts of Interference with Commerce by Robbery-Attempt , and thirteen counts of Use of a Firearm During a Crime of Violence, in violation of 18 U.S.C. §§ 1951, 924(c)(1) and 2. Smith was charged under the

2

No. 14-30816

Smith filed motions to suppress all evidence obtained as a result of the GPS device being placed on the truck, to suppress his statements made to the law enforcement officials, and to sever his trial from that of his codefendant. The district court denied all three motions.[2]

Robinson and Smith proceeded to trial in January 2014. At the close of the government's case the defendants moved for acquittal, which the district court denied. Neither defendant put on a case. Robinson was found guilty on all counts, and Smith was found guilty on all counts but two.[3] Robinson was sentenced to 3,771 months, which consisted of 87-month concurrent sentences for the conspiracy and robbery convictions, seven years for the first firearm charge, and 25 years for each of the subsequent firearm charges, to run consecutively. Smith was sentenced to 1,659 months. He received 75-month concurrent sentences for the conspiracy and robbery convictions, seven years for the first firearm charge, and 25 years for each of the subsequent firearm charges, to run consecutively. Robinson and Smith timely appealed.

## DISCUSSION

Smith appeals the district court's denial of his motions to suppress and motion to sever. He also argues there was insufficient evidence to sustain his convictions for aiding and abetting the use of a firearm in violation of 18 U.S.C. § 924(c)(1) and § (2). Smith and Robinson both argue their sentences violate the Eighth Amendment's prohibition on cruel and unusual punishment, and that the Supreme Court's decision in *Deal v. United States*, 508 U.S. 129 (1993), allowing the "stacking" of section 924(c) violations, was wrongly decided.

---

same statutes with one count of conspiracy, seven counts of robbery and attempted robbery, and seven counts of use of a firearm.

[2] The district court docket reflects that Smith requested the motions to suppress be decided without a hearing. Case No. 5:13-CR-69-2; ECF No. 112.

[3] Smith was found not guilty on one count of aiding and abetting interference with commerce by robbery, and one count of aiding and abetting the use of a firearm.

No. 14-30816

*I.     Smith's motion to suppress the evidence obtained from the GPS*

When reviewing the district court's denial of a motion to suppress evidence, we review factual findings for clear error and legal conclusions de novo. *United States v. Allen*, 625 F.3d 830, 834 (5th Cir. 2010). The evidence is viewed in the light most favorable to the party who prevailed. *Id.*

The district court denied Smith's motion to suppress, adopting the magistrate judge's finding that there was sufficient information in the affidavit to support probable cause for the search warrant to issue.

The government conducts a search for Fourth Amendment purposes when it attaches a GPS device to a vehicle and uses it to monitor movement. *United States v. Jones*, 132 S. Ct. 945, 949 (2012). In reviewing the denial of a motion to suppress evidence discovered pursuant to a warrant, we first decide "whether the good-faith exception to the exclusionary rule applies." *United States v. Sibley*, 448 F.3d 754, 757 (5th Cir. 2006) (citation omitted). That "exception provides that where probable cause for a search warrant is founded on incorrect information, but the officer's reliance upon the information's truth was objectively reasonable, the evidence obtained from the search will not be excluded." *Id.* (citation and quotation marks omitted). The exception does not apply when: (1) the issuing judge was "misled by information in an affidavit that the affiant knew or should have known was false"; (2) the issuing judge "abandoned the judicial role"; (3) the warrant affidavit was "so lacking in indicia of probable cause as to render belief in its existence entirely unreasonable"; or (4) "the warrant was so facially deficient that the executing officers could not have reasonably presumed it to be valid." *Id.* (citation omitted). If the good-faith exception applies, the district court's denial of the motion to suppress is affirmed without further analysis. *See id.* If the good-faith exception does not apply, we proceed to the second step and determine

4

whether the issuing judge had a "substantial basis for concluding that probable cause existed." *Id.* at 757-58 (citation omitted).

Smith's arguments on appeal involve the third and fourth parts of the good-faith exception. He argues the district court erred in denying his motion to suppress because the warrant affidavit fell far short of demonstrating probable cause. He further argues that the search warrant itself was "constitutionally defective."

### A. The affidavit's indicia of probable cause and the officials' reasonable belief in the existence of probable cause

Smith asserts the affidavit was "bare bones" because it failed to state the underlying circumstances on which Detective Lane Smith concluded the informants were credible, and failed to give a meaningful description of the underlying circumstances on which the informants based their conclusion that Smith was engaged in criminal activity.

"When a warrant is supported by more than a 'bare bones' affidavit, officers may rely in good faith on the warrant's validity." *United States v. Satterwhite*, 980 F.2d 317, 321 (5th Cir. 1992). "'Bare bones' affidavits contain wholly conclusory statements, which lack the facts and circumstances from which a magistrate can independently determine probable cause." *Id.*

The magistrate judge held that the affidavit contained sufficient indicia of probable cause for a warrant to issue. Detective Smith provided detailed facts based on his observations and the observations of other law enforcement officers, and information obtained from confidential informants who had been interviewed in the previous 24 hours. The affidavit detailed that (1) one informant had firsthand knowledge that Smith, who is a white male, and another person, were involved in the robbery of the Breaktime Bar, and that a pistol grip shotgun was used; (2) victims of the Breaktime Bar robbery

5

reported it was committed by two robbers, both believed to be white males, one of whom was armed with a pistol grip shotgun; (3) two of the informants implicated Smith in a recent robbery of a Waffle House; (4) a Waffle House was robbed by two masked suspects, one of whom was described as a white male, and one of whom was armed with a pistol grip shotgun; (5) Detective Smith was assigned to investigate an attempted armed robbery of a Budget Inn and observed video surveillance of two masked suspects, one of whom appeared to be a white male armed with a pistol-grip shotgun; (6) Detective Smith observed that this robbery was similar to the armed robberies believed to have been committed by Smith; (7) Detective Smith spoke with Officer Chapel who, just prior to the time of the Budget Inn robbery attempt, observed a blue Dodge pickup truck near the Budget Inn; (8) Officer Chapel documented that the Dodge pickup truck was registered to Smith's mother; (9) the informants verified that the Dodge pickup truck observed by Officer Chapel was driven by Smith on a daily basis; and (10) the informants verified that Smith lived at the address listed on the Dodge pickup truck's registration.

These are far from being "wholly conclusory statements," and they detail the circumstances from which the magistrate could determine probable cause. Smith also argues the informants were not credible. "One means of establishing the reliability of information provided by a confidential informant is corroboration . . . ." *United States v. Fisher*, 22 F.3d 574, 578 (5th Cir. 1994) (citing *Illinois v. Gates*, 462 U.S. 213, 244 (1983)). Here, the information provided by the informants was corroborated by each other, the victims of the robberies, and Officer Chapel.

Because the affidavit was not "so lacking in indicia of probable cause as to render belief in its existence entirely unreasonable," the good-faith exception applies.

No. 14-30816

*B. The facial deficiency of the warrant and the reasonableness of the officials' presumption of its validity*

The entirety of Smith's argument on this point is that the state judge signed a "pre-prepared Order" containing "boiler-plate language," and that this "rubber-stamp method of obtaining warrants is in direct violation of the Fourth Amendment and should not be allowed."

A warrant must "particularly describ[e] the place to be searched, and the persons or things to be seized." U.S. CONST. amend. IV. The particularity is sufficient when it "leave[s] nothing . . . to the discretion of the officer executing the warrant." *Allen*, 625 F.3d at 835 (citation and quotation marks omitted).

The warrant specified that an electronic tracking device was to be placed on the 2002 Dodge pickup truck being used by Smith; the installation was to take place while the vehicle was in a public place; the device could be monitored by live or historical tracking; continuous monitoring was permitted until the tracking device lead to the location where the offenses were being committed by Smith; and monitoring was to terminate upon the conclusion of the investigation or, in any event, 30 days from the date of the warrant, unless reapplication was made. The warrant particularly described the place to be searched and left nothing to the discretion of the executing officer. Officers could reasonably presume it was valid.

Smith asserts for the first time in his reply brief that the affidavit contained "significant defects and/or omissions." We do not agree, but regardless, arguments raised for the first time in a reply brief are waived. *See Sanders v. Unum Life Ins. Co. of Am.,* 553 F.3d 922, 927 (5th Cir. 2008).[4]

---

[4] Smith also asserts for the first time on appeal that "[i]t appears that . . . Detective Smith presented a six person lineup to the two Waffle House employees, neither of whom could identify Halston Smith" and that "[t]his exculpatory information was . . . willfully omitted to buttress the Affidavit." Smith does not support this contention with any citation to the record; therefore, we decline to consider it. *See* Fed. R. App. P. 28(a)(8)(A); *see also*

No. 14-30816

Even if the affidavit contained defects, a "misstatement can vitiate an affidavit only where the misrepresentations are the product of deliberate falsehood or of reckless disregard for the truth." *Moreno v. Dretke,* 450 F.3d 158, 169 (5th Cir. 2006) (citation and quotation marks omitted). Smith makes no showing that Detective Smith deliberately lied or recklessly disregarded the truth. Thus, this argument fails.

The good-faith exception to the warrant requirement applies. The district court's denial of the motion to suppress evidence obtained from the GPS device was proper.

## II.    *Smith's motion to suppress his statements*

Smith argues the evidence obtained pursuant to his interviews with law enforcement officials should be suppressed as his statements were not voluntary. In reviewing the admission of a confession over a claim it was involuntary, we generally will "give credence to the credibility choices and fact finding by the district court unless they are clearly erroneous; the ultimate issue of voluntariness, however, is a legal question reviewed *de novo*." *United States v. Reynolds*, 367 F.3d 294, 298 (5th Cir. 2004) (citation omitted). The government must prove voluntariness by a preponderance of the evidence. *Id.* at 297-98. "The voluntariness of a confession depends on whether, under the totality of the circumstances, the statement is the product of the accused's free and rational choice." *Id.* at 298 (citation and quotation marks omitted).

Smith argues that his confession was coerced because authorities told him that he needed to cooperate to "avoid a life sentence at Angola." He further asserts his statements were not voluntary because the questioning began at

---

*United States v. Guerrero*, 169 F.3d 933, 943 n.2 (5th Cir. 1999) ("[I]t is the duty of the party raising an issue on appeal to include the relevant items in the record on appeal.") (citations omitted).

3:00 a.m. and lasted most of the day, and, "at the time of his arrest and interrogations, [he] was highly intoxicated and under the influence of prescription medication." The Government responds that even if Smith had used drugs or alcohol earlier in the evening, he affirmed during his interviews that his head was clear and that he understood what was going on. The recording of the interview with the Shreveport Police Department indicates Smith listened to the questions and responded appropriately. Finally, a police detective testified at trial that Smith did not appear to be under the influence of drugs or alcohol.

The district court denied Smith's motion to suppress, noting that Smith was "advised of [his] *Miranda* rights" and "repeatedly stated (orally and in writing) that [he] understood those rights." The district court found no evidence of coercion or deception by police. The court, after listening to the recorded interviews, found that Smith did not sound "highly intoxicated."

In one case, a defendant argued his statements to police should be suppressed based on his use of methamphetamine shortly before his arrest and because of a lack of sleep. *Reynolds*, 367 F.3d at 297. We held the confession was admissible because the defendant had been given his *Miranda* warnings, was willing to talk to police, "listened to questions, and responded appropriately," and was able to detail the crimes. *Id.* at 299. Those who interviewed him also testified that, based on their experiences, he was not impaired by drugs or alcohol. *Id.*

The same is true here. Smith does not dispute that he was advised of his *Miranda* rights, and the trial testimony and transcripts of the interviews reveal that he understood his rights, was cooperative, listened to questions and responded, and gave detailed accounts of the robberies. In addition, one of the interviewing officers testified at trial that Smith did not appear to be under the influence of drugs or alcohol. Also, importantly, the district court found

No. 14-30816

that Smith was not "highly intoxicated" – a factual finding we give credence to unless "clearly erroneous." *Id.* at 298.

As to coercion, Smith states that authorities told him that in order to avoid a life sentence at Angola, he needed to cooperate. A statement by officers that a defendant will be "sent to prison for the rest of [his] li[fe]" is "insufficient, standing alone, to establish that [the defendant's] subsequent cooperation was involuntary." *United States v. Rico*, 51 F.3d 495, 507 (5th Cir. 1995).

We conclude that, under the totality of the circumstances, Smith's confession was voluntary as it was the product of his free and rational choice. The district court's denial of the motion to suppress is affirmed.

### III.    *Smith's motion to sever his trial*

The denial of a motion to sever is reviewed for abuse of discretion. *United States v. Thomas*, 627 F.3d 146, 156 (5th Cir. 2010). To demonstrate the district court abused its discretion, "the defendant bears the burden of showing specific and compelling prejudice that resulted in an unfair trial . . . ." *Id.* at 157 (citation and quotation marks omitted). Reversal is warranted only if the defendant "identifies specific events during trial and demonstrates that these events caused him substantial prejudice." *Id.* (citation omitted).

Smith argues the district court's denial of his motion to sever was "legal error" because he was unfairly prejudiced by the joint trial. The district court denied the severance motion, noting that Smith made a "generalized, unsupported assertion that if forced to trial with Robinson, he w[ould] be unfairly prejudiced" and that Smith alluded to confrontation clause problems but failed to "explicitly articulate[]" the issues.

On appeal, Smith asserts that "[b]ecause the two defendants were charged with separate offenses, they should have been tried separately . . . [as] we do not know if the jury punished Smith for the actions of Robinson." A risk

10

of a "spillover effect," however, does not, by itself, warrant severance. *United States v. Owens*, 683 F.3d 93, 98 (5th Cir. 2012) (citation and quotation marks omitted). Smith references "problems associated with the confrontation clause," but does not state what those problems might be.

Because Smith has failed to identify any "specific events during trial" that caused him "substantial prejudice," he has not established that the district court abused its discretion in denying his motion to sever. *See Thomas*, 627 F.3d at 157. The district court's denial of the motion to sever was not error.

*IV.     Sufficiency of the evidence on Smith's section 924(c) convictions*

Smith was convicted of six counts of aiding and abetting the use of a firearm in relation to a crime of violence in violation of 18 U.S.C. § 924(c) and § 2. He argues on appeal there was insufficient evidence to support the convictions because he took no affirmative action related to the firearms.

"To determine whether there was sufficient evidence to sustain a conviction, we ask whether a rational trier of fact could find proof of the essential elements of the crime beyond a reasonable doubt when viewing the evidence and drawing all inferences in favor of the verdict." *Owens*, 683 F.3d at 101. (citation omitted).

Two months after the defendants' trial, but several months before the briefing in this case, the Supreme Court decided *Rosemond v. United States*, 134 S. Ct. 1240 (2014). The Court held that for a defendant to be found guilty of aiding and abetting the use of a firearm under section 924(c), the Government must prove the defendant "actively participated in the underlying . . . violent crime with advance knowledge that a confederate would use or carry a gun during the crime's commission." *Id*. at 1243. "Advance knowledge," the Court held, means "knowledge at a time the accomplice can do something with it – most notably, opt to walk away." *Id*. at 1249-50. When "a defendant

continues to participate in a crime after a gun was displayed or used by a confederate, the jury can permissibly infer from his failure to object or withdraw that he had such knowledge." *Id.* at 1250 n.9. Applying this reasoning, Smith's section 924(c) convictions must be supported by evidence, direct or circumstantial, that Smith (1) actively participated in the robberies and (2) had advance knowledge that one of his confederates would use or carry a firearm during the commission of the robberies.

Smith does not argue on appeal that the evidence was insufficient to show his active participation in the robberies; neither does he argue the evidence was insufficient to show he had advance knowledge that a gun would be used.[5] Instead, he argues that reversal of the section 924(c) convictions is warranted because there was insufficient evidence at trial that he "took some action to facilitate or encourage the use or carrying of a firearm." Smith's argument reflects the law in this circuit prior to *Rosemond*. Because "this case is on direct appeal, newly announced rules apply." *United States v. Knowles*, 29 F.3d 947, 951 (5th Cir. 1994) (citing *Griffith v. Kentucky*, 479 U.S. 314 (1987)). The sufficiency issue must be examined under the *Rosemond* analysis.

The following evidence was presented to the jury as to the robberies for which Smith received section 924(c) convictions: Smith told officials he drove his Dodge pickup truck for the robbery of a Pizza Hut – the first robbery in which Smith participated – and that a 12-gauge shotgun was used; Smith told officials he drove his vehicle for a robbery of the Breaktime Bar, Smith went inside the establishment, and a firearm was used; Smith told officials he drove to the robbery of an Applebee's and that a 12-gauge shotgun was used; Smith

---

[5] In fact, Smith concedes on appeal that the evidence at trial established that he and Robinson drove together to four of the six robberies, and that Robinson was armed for all six. As to the two robberies that Smith does not admit driving to, he concedes that his own gun was used for one, and that, "[a]rmed with a weapon, both defendants entered the establishment and participated" in the other.

told officials he drove his Dodge pickup truck to the robbery of a Subway in Louisiana and that a 12-gauge shotgun was used; Smith told officials that he supplied a .45 caliber pistol and .380 caliber pistol for a robbery of the Southfield Grill; Smith told officials that he drove his Dodge pickup truck to the robbery of an Outback Steakhouse and that he brought a .45 and .380. Also as to the Outback Steakhouse robbery, there was evidence that Smith was arrested while fleeing the robbery in his Dodge pickup truck, and that, after his arrest, officials found a .45 on the driver's seat. Last, there was testimony at trial that Smith admitted to entering and robbing a Subway in Texas while armed with a .357 revolver,[6] and that he directed law enforcement officials to a pond where they found "the sawed-off pump shotgun that was used in multiple armed robberies."

We find that a rational jury could have found beyond a reasonable doubt that Smith actively participated in the robberies and had advance knowledge a firearm would be used. A defendant "actively participates" in a crime for aiding and abetting purposes where the "aid relates to . . . one (or some) of a crime's phases or elements." *Rosemond*, 134 S. Ct. at 1247. The evidence at trial established that, at the very least, Smith either drove or supplied weapons for all six robberies. To show 'advance knowledge,' there must be sufficient evidence that Smith knew ahead of time – at a time when he could have walked away – that his accomplices were going to carry guns during the commission of the robberies. *See id.* at 1249-50. The evidence is sufficient as to the second and subsequent robberies, partly because Smith continued to participate after the first-in-time armed robbery of the Pizza Hut. *See id.* at 1250 n.9. The robbery of the Pizza Hut is a closer question. Still, "the factfinder can draw

---

[6] Smith was convicted of conspiracy to interfere with commerce by robbery in relation to this robbery.

13

inferences about a defendant's intent based on all the facts and circumstances of a crime's commission." *Id.* Viewing the evidence, and drawing all inferences, in favor of the verdict, a rational jury could have concluded that Smith had advance knowledge a gun would be used in the Pizza Hut robbery.[7]

The evidence at trial was sufficient for a rational jury to conclude that Smith was guilty of aiding and abetting the section 924(c) violations.

Smith argues for the first time in his reply brief that the aiding and abetting jury instruction given by the district court was erroneous under *Rosemond* as it did not require that Smith's knowledge of firearm use be "advance knowledge."[8]  Even if Smith had properly raised this argument on appeal instead of waiting until the reply brief, we would hold any error to be harmless. An error in a jury instruction "is harmless if this court after a thorough examination of the record is able to conclude beyond a reasonable doubt that the jury verdict would have been the same absent the error." *United States v. Barraza*, 655 F.3d 375, 382 (5th Cir. 2011) (citation and quotation marks omitted).  The question before us, then, is: If the jury instruction would have stated that advance knowledge of the firearm use was required, would the jury's verdict have been the same?

We answer in the affirmative.  We have already held that the evidence was sufficient for a rational jury to find all the elements of a section 924(c) violation.  Thus, even had the jury instruction included the requirement that Smith have advance knowledge of the firearm use, we conclude the jury's verdict would have been the same.

---

[7] Smith conceded at oral argument that he owned the shotgun that was used in the Pizza Hut robbery.

[8] The district court's jury instruction was based largely on the current Fifth Circuit Pattern Jury Instruction for 18 U.S.C. § 924(c)(1), which may need to be revised in light of *Rosemond*.

## V.    *Cruel and unusual punishment*

Robinson and Smith argue their sentences violate the Eighth Amendment's prohibition against cruel and unusual punishment because the sentences are "grossly disproportionate to the offenses that were committed."

We review constitutional challenges de novo. *United States v. Whaley*, 577 F.3d 254, 256 (5th Cir. 2009) (citation omitted). "The Eighth Amendment has been read to preclude a sentence that is greatly disproportionate to the offense, because such sentences are cruel and unusual." *Thomas*, 627 F.3d at 160 (citation and quotation marks omitted). "On review, however, this court does not substitute its judgment for that of the legislature nor of the sentencing court as to the appropriateness of a particular sentence; it should decide only if the sentence is within the constitutional limitations." *Id.* (citation and quotation marks omitted). Thus, our review is narrow, and "successful Eighth Amendment challenges to prison-term lengths will be rare." *Id.* (citation and quotation marks omitted).

In one case, a defendant was sentenced to 1,435 months, almost 90% of the sentence being for five section 924(c) violations. *Id.* at 159. In holding the sentence did not violate the Eighth Amendment, we stated that its length "was the result of a Congressional decision to establish mandatory minimum sentences for certain weapons offenses." *Id.* at 160. Although the "'sentence is a long one . . . . it reflects a rational legislative judgment, entitled to deference, that offenders who have committed serious or violent felonies and who continue to commit felonies must be incapacitated.'" *Id.* (quoting *Ewing v. California*, 538 U.S. 11, 30 (2003)).

While Smith and Robinson's sentences are lengthy, they are the result of congressionally established mandatory minimums. "[I]t is for Congress to ameliorate the result of application of statutory mandatory minimum sentences if it deems it too harsh." *United States v. Looney*, 532 F.3d 392, 397

No. 14-30816

(5th Cir. 2008) (citation, quotation marks, and brackets omitted).

These sentences do not constitute cruel and unusual punishment in violation of the Eighth Amendment.[9]

*VI.    Challenge to* Deal v. United States

Both defendants argue that their second and subsequent section 924(c) convictions should not have been "stacked" to create sentences of over 300 years (Robinson) and 100 years (Smith). They acknowledge the Supreme Court rejected this argument in *Deal v. United States,* 508 U.S. 129 (1993). We must reject it as well.

AFFIRMED.

---

[9] Robinson also asserts that his sentence violates the Eighth Amendment because 18 U.S.C. § 924(c) is applied disparately across the country by United States Attorney's Offices and disproportionally to African-American defendants. For support of this argument, Robinson relies solely on materials from the Sentencing Commission. As the Government points out, this type of claim is usually raised as an equal protection claim. *See McCleskey v. Kemp*, 481 U.S. 279 (1987). To prevail on such a claim, Robinson must "prove that the decisionmakers in *his* case acted with discriminatory purpose." *Id.* at 292 (emphasis in original). Robinson does not argue, much less cite to any evidence he presented in district court, that the decisionmakers in his case acted with a discriminatory purpose. In fact, Smith, who is white, received the same penalty per offense as Robinson.

16